

**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Service Process Team 3-11-309<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Copy of transmittal only provided to:** | Rebecca Lewis<br>Kevin Jones<br>Cassandra Struble |

| | |
|---|---|
| **Entity:** | Nationwide Property And Casualty Insurance Company<br>Entity ID Number  3286574 |
| **Entity Served:** | Nationwide Property & Casualty Ins Co |
| **Title of Action:** | Larry Wilson vs. Nationwide Property and Casualty Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Davidson County Circuit Court, Tennessee |
| **Case/Reference No:** | 16C1148 |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 05/06/2016 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Farrar Wright, PLLC<br>N/A |

**Notes:**     Image matches the original document as it was served.

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

May 2, 2016


Nationwide Property & Casualty Ins Co          Certified Mail
2908 Poston Avenue, C/O C S C                  Return Receipt Requested
Nashville, TN  37203                           7015 0640 0007 0043 3217
NAIC # 37877                                   Cashier # 25606

Re:    Larry And Kandice Wilson  V.  Nationwide Property & Casualty Ins Co

       Docket # 16C1148

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 29, 2016, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Davidson County
    1 Public Square, Room 302
    Nashville, Tn  37219-6303

# CIRCUIT COURT SUMMONS

## NASHVILLE, TENNESSEE

### STATE OF TENNESSEE
### DAVIDSON COUNTY
### 20TH JUDICIAL DISTRICT

FILED
2016 APR 25 PM 2: 26
RICHARD R. ROOKER
*Alyy*
D.C

☑ First
☐ Alias
☐ Pluries

Larry and Kandice Wilson

CIVIL ACTION
DOCKET NO. 16C1148

_____

_____

Plaintiff

**Method of Service:**

☐ Davidson County Sheriff

☐ Out of County Sheriff

☐ Secretary of State

☐ Certified Mail

☐ Personal Service

☒ Commissioner of Insurance

**Vs.**

Nationwide Property and Casualty Insurance Company

_____

_____

_____

Defendant

**To the above named Defendant:**

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: 4-25-2016

**RICHARD R. ROOKER**
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | Sonya S. Wright, Esq. |
|---|---|
| | 122 N. Church Street |
| | Address |
| | Murfreesboro, TN 37130 |

**TO THE SHERIFF:**

Please execute this summons and make your return hereon as provided by law.

**RICHARD R. ROOKER**
Circuit Court Clerk

Received this summons for service this _____ day of _____, 20____.

_____
**SHERIFF**

& To request an ADA accommodation, please contact Dart Gore at (615) 880-3309.

## RETURN ON PERSONAL SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20_____, I:

| | served this summons and complaint/petition on _____
|---|

_____ in the following manner:

_____

| | failed to serve this summons within 90 days after its issuance because _____
|---|

_____

_____
                                              Sheriff/Process Server

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20_____ I sent, postage prepaid by

registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Docket No.

_____ to the defendant, _____. On the _____ day of

_____, 20____, I received the return receipt for said registered or certified mail, which had been signed

by _____ on the _____ day of _____, 20____. Said return

receipt is attached to this original summons and both documents are being sent herewith to the Circuit Court Clerk for filing.


SWORN TO AND SUBSCRIBED BEFORE ME ON THIS

_____ DAY OF _____, 20____.          _____

                                              PLAINTIFF, PLAINTIFF'S ATTORNEY OR OTHER PERSON

                                              AUTHORIZED BY STATUTE TO SERVE PROCESS

_____

_____ NOTARY PUBLIC or _____ DEPUTY CLERK

MY COMMISSION EXPIRES: _____

## NOTICE

TO THE DEFENDANT(S):

        Tennessee law provides a ten thousand dollar ($10,000.00) debtor's equity interest
personal property exemption from execution or seizure to satisfy a judgment. If a judgment
should be entered against you in this action and you wish to claim property as exempt, you
must file a written list, under oath, of the items you wish to claim as exempt with the clerk of
the court. The list may be filed at any time and may be changed by you thereafter as necessary;
however, unless it is filed before the judgment becomes final, it will not be effective as to any
execution or garnishment issued prior to the filing of the list. Certain items are automatically
exempt by law and do not need to be listed; these include items of necessary wearing apparel
(clothing) for yourself and your family and trunks or other receptacles necessary to contain such
apparel, family portraits, the family Bible, and school books. Should any of these items be seized,
you would have the right to recover them. If you do not understand your exemption right or how
to exercise it, you may wish to seek the counsel of a lawyer.

                                              ATTACH

                                              RETURN

                                              RECEIPT

                                              HERE

                                              (IF APPLICABLE)

STATE OF TENNESSEE                I, Richard R. Rooker, Clerk of the Circuit Court in the State and County aforesaid,
COUNTY OF DAVIDSON               do hereby certify this to be a true and correct copy of the original summons issued
                                 in this case.
                                         RICHARD R. ROOKER, CLERK
(To be completed only if
copy certification required.)
                                 By: _____ D.C.

# IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

LARRY AND KANDICE WILSON,              )

    Plaintiffs,                                    )

v.                                                         )    JURY DEMAND

NATIONWIDE PROPERTY AND        )    Case No.: 16 C 1148
CASUALTY INSURANCE COMPANY,  )

    Defendant.                                    )

FILED
2016 APR 25 PM 2:26
RICHARD R. ROOKER, CLERK
_____ D.C.

## COMPLAINT

Plaintiffs, Larry and Kandice Wilson, for their Complaint against Defendant, Nationwide Property and Casualty Insurance Company ("Defendant" or "Nationwide"), would respectfully show and allege to the Court as follows:

## GENERAL ALLEGATIONS

1.    Plaintiffs, Larry and Kandice Wilson, are residents of Davidson County, Tennessee and have owned property located at 2734 Mossdale Drive, Nashville, TN 37217 for over ten years.

2.    Defendant, Nationwide, is a for-profit foreign insurance company authorized to engage in, and does engage in, the sale and delivery of property insurance within the State of Tennessee with its principal place of business located at One Nationwide Plaza, Columbus, Ohio 43215. The Defendant may be served with service of process through the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, TN 37243.

3.    Plaintiffs' claim for relief arises from a covered loss to their property located at 2734 Mossdale Drive, Nashville, Tennessee 37217 ("Property"). Venue is proper pursuant to Tenn. Code Ann. § 20-4-103.

4.    At all times material hereto, Plaintiffs have been the owners of the Property.

1

5.     Plaintiffs renewed or procured a policy of homeowner's insurance ("Policy"), from Defendant covering the above-referenced Property. A copy of the certified Policy is attached as Exhibit 1.

6.     In consideration of premiums paid by Plaintiffs to Defendant, the Policy was issued, insuring the Plaintiffs' Property against all risks, unless specifically excluded. The Policy provided dwelling insurance coverage in the amount of $203,800.00, in addition to other coverages.

7.     Plaintiffs have renewed the Policy each and every year and have paid all premiums due thereunder and otherwise met all conditions of coverage thereunder.

8.     On or about April 23, 2015, while the Policy was in full force and effect, the Property was damaged.

9.     The damage to Plaintiffs' Property is caused by a covered peril under the Policy.

10.     A notice of loss and damage was properly given by Plaintiffs to Defendant in accordance with the terms of the Policy.

11.     Almost three months later, on or about July 14, 2015, Defendant sent ECS Central, PLLC ("ECS") to investigate the Property and they sent correspondence to Defendant. A copy of the ECS correspondence is attached as Exhibit 2.

12.     ECS acknowledged that the "geological formations in the area of the subject property are potentially prone to karst related subsidence" but found that the depression was not karst related "at the time of this study." *See Exhibit 2.*

13.     Several more weeks passed with no response from Defendant.

2

14.	On or about September 1, 2015, Defendant advised Plaintiffs that it was denying coverage under the Policy based upon a desk study and field reconnaissance conducted by ECS that the damage was not sinkhole related. A copy of this correspondence is attached as Exhibit 3.

15.	On or about November 23, 2015, Plaintiffs, through counsel, sent a request that actual testing be completed to confirm the cause of the damage, and that the full amount be paid or that Plaintiffs would seek a bad faith penalty for the handling of his claim. A copy of this correspondence is attached as Exhibit 4.

16.	Defendant has not responded to this correspondence in any way.

17.	More than 60 days has passed since Plaintiffs demanded an investigation and payment and as of the date of this filing, there has been no indication from Defendant that the claim will be paid and no payment has been made on the claim.

18.	Plaintiffs have complied fully with all of the provisions of the Policy, but Defendant has declined or refused to make payment to the Plaintiffs for the loss and damage sustained.

19.	Plaintiffs have been required to retain the services of the undersigned counsel and is obligated to pay them a reasonable fee for their services.

## BREACH OF CONTRACT

20.	Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 19 above as though fully set forth herein.

21.	Defendant has breached the Policy by denying coverage and failing and refusing to pay all benefits due thereunder for the claim of sinkhole activity when its own professional geologist confirmed that there was sinkhole activity near the Property but failing to prove that an exclusion exists that allows coverage to be denied.

3

22.     Defendant failed to properly investigate the Property as required under the Policy and by state statute.

23.     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of this claim.

24.     Defendant failed to investigate the Plaintiffs' claim in a prompt and thorough manner.

25.     Defendant intentionally ignored repeated requests to reconsider its wrongful denial of insurance coverage for the Plaintiffs' claim and failed to provide its full investigation materials upon request.

26.     Defendant represented to its insured that exclusionary language contained in the Policy excluded coverage of the claim, when the Defendant knew or should have known that it did not exclude coverage for the type of loss incurred.  Such acts or omissions were committed intentionally, recklessly, and/or negligently.

27.     Defendant owes Plaintiffs prejudgment interest, expert fees, costs, the costs of all structurally necessary repairs, and, if the home is not repairable within applicable coverage limits, an amount equal to such limits for the total constructive loss as well as a return of all premiums paid for the Policy.

## VIOLATIONS OF THE TENNESSEE SINKHOLE STATUTE

28.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 27 above as though fully set forth herein.

29.     Defendant has violated the Tennessee Sinkhole Statute ("Sinkhole Statute"), Tennessee Code Annotated section 56-7-130, when Defendant had an obligation to comply with the Sinkhole Statute.

4

30.     The Defendant's acts and/or omissions in violation of the Sinkhole Statute include but are not limited to: failing to conduct an investigation as required under the Sinkhole Statute, failing to investigate other properties as required under the Sinkhole Statute, and failing to eliminate sinkhole activity as a cause of the damage within a reasonable professional probability.

31.  The Plaintiffs' are homeowners in the state of Tennessee, are within the protection of the Sinkhole Statute, and are intended to benefit from these laws.

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

32.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 31 above as though fully set forth herein.

33.     Defendant has breached the covenant of good faith and fair dealing that is a part of the Policy that it made with the Plaintiffs.

34.     Defendant has provided the report of ECF which is dated July 14, 2015 even though Defendant represented to the Plaintiffs that its investigation was incomplete and did not send a coverage determination until September 1, 2015.

35.     In addition, Defendant has acknowledged that it must comply with the Sinkhole Statute and yet failed to eliminate sinkhole activity as the cause of the damage to the Plaintiffs' Property.

36.     Defendant has evaded the spirit of the bargain with the Plaintiffs, has shown a lack of diligence and slacking off with regards to the investigation of the claim and performing under the Policy, and has willfully rendered imperfect performance under the Policy.

5

## UNFAIR CLAIMS PRACTICES

37.    Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 36 above as though fully set forth herein.

38.    Defendant committed unfair claims practices in violation of Tenn. Code Ann. §§ 56-8-101 through 56-8-111, including, but not limited to:

(A)    Failing to make a good faith attempt to effect prompt, fair, and equitable payment of Plaintiffs' claim, in violation of Tenn. Code Ann. § 56-8-105 when it delayed providing a coverage determination for months;

(B)    Refusing to pay Plaintiffs' claim without conducting a reasonable investigation in violation of Tenn. Code Ann. § 56-8-105 when it failed to follow the mandates of investigation in the Sinkhole Statute; and,

(C)    Knowingly misrepresenting relevant policy provisions relating to coverages at issue in violation of Tenn. Code Ann. § 56-8-105 by failing to disclose the coverage under the Sinkhole Statute.

39.    The Defendant's acts and/or omissions regarding this claim were made willfully or knowingly and while not a separate cause of action, supports Plaintiffs' claim for breach of contract and bad faith.

## NEGLIGENCE *PER SE*

40.    Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 39 above as though fully set forth herein.

41.    Defendant failed to follow the minimum standards for investigating a sinkhole claim as set forth in Tenn. Code Ann. § 56-7-130 (d), including those described above and including that Defendant ignored additional requests by the Plaintiffs for actual testing and Defendant failed to conduct an investigation of sufficient scope to eliminate sinkhole activity as the cause of the damage to the Property under Tenn. Code Ann. § 56-7-130 (d)(1) and (3).

6

42.     As a result of Defendant's failure to perform its statutory duty, Plaintiffs have been injured. Plaintiffs were within the protection of the Tenn. Code Ann. § 56-7-130 and were intended to benefit from these laws.

## BAD FAITH

43.     Plaintiffs adopt and incorporate by reference the allegations contained in paragraphs 1 through 42 above as though fully set forth herein.

44.     Defendant's failure and refusal to pay is not in good faith, and such failure to pay has inflicted expense, loss, and injury upon Plaintiffs. Accordingly, Plaintiffs are entitled to recover, in addition to the amount of the insured loss and interest thereon, an amount equal to twenty-five percent (25%) of the liability for the loss, pursuant to Tenn. Code Ann. § 56-7-105.

45.     The acts and/or omissions of Defendant constitute bad faith with respect to the exercise of its duties and obligations to the Plaintiffs, including, but not limited to:

(A)     Defendant failed to exercise the skill, care and knowledge required of a licensed insurance carrier with respect to the investigation and handling of insurance claims;

(B)     Defendant failed to investigate the Plaintiffs' claims in a prompt and thorough manner; and,

(C)     Defendant intentionally ignored requests to pay the claim of insurance policy coverage for the Plaintiffs' claims.

Such acts or omissions were committed intentionally, recklessly and negligently.

46.     Defendant has exhibited a pattern of conduct with regard to its claims handling practices, which has resulted in repeated misconduct amounting to intentional or reckless bad faith toward its insureds. A history of court determinations and complaints of bad faith conduct on the part of Defendant has put Defendant on notice that its claims handling practices have resulted in repeated incidents of bad faith. In spite of such notice, Defendant has intentionally or recklessly

7

or carelessly failed to correct its corporate policies or otherwise train its personnel in such a manner as to reduce or eliminate the misconduct.

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment against Defendant for (i) actual damages; (ii) costs, including expert fees; (iii) reasonable attorneys' fees; (iv) all general and special damages, including but not limited to the full cost of repair or replacement of Plaintiffs' home; (v) pre-judgment interest; (vi) punitive damages; and (vii) any other relief as the Court deems just and appropriate. Plaintiffs prays for all relief and damages to which they are entitled under the common law, the Sinkhole Statute, and state law, including compensatory damages, attorney fees, and costs in an amount not to exceed six hundred and fifty thousand dollars ($650,000.00).

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury of twelve (12) persons to try all issues so triable in this matter and such further and general relief to which they may be entitled.

Respectfully submitted,

*Sonya S. Wright*
Sonya S. Wright (BPR 023898)
Farrar | Wright, PLLC
122 North Church Street
Murfreesboro, Tennessee 37130
(615) 800-4747, phone
(615) 900-3473, facsimile
sonya@farrarwright.com

*Attorney for Plaintiffs*

The firm of Farrar | Wright, PLLC is surety for all costs in this cause.

*Sonya Smith Wright*
Sonya Smith Wright

8

EXHIBIT

1

FILED

2016 APR 25 PM 2: 26

RICHARD R. ROOKER, CLERK

_____ D.C.

## Certification

I, Victoria Noel, as a duly authorized Nationwide Insurance associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief, certify under the penalty of perjury that this attached copy of policy **6341ho540510** was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.

_Victoria S. Noel_

Signature

Date:    May 6, 2015

Victoria Noel

Print Name

Sr. Processor, Imaging

Title

| Policy Number | Date Prepared |
|---|---|
| 63 41 HO 540510 | NOV 26, 2014 |
| | |

APRIL BOWERS AGENCY, INC.
STE 8
211 DONELSON PIKE
NASHVILLE TN 37214

0350500733011

63 41 HO 540510

**How to Contact Us**
**For Billing or Policy questions:**
**1-877-262-0247**

**Nationwide Representative:**
APRIL BOWERS AGENCY, INC.
AGENT NUMBER : 0031769
615-883-8183

LARRY WILSON
2734 MOSSDALE DR
NASHVILLE TN 37217-4142

---

**See back of your statement for important phone numbers and other information about your insurance.**

**Note:**
The enclosed Declarations confirm change(s) made to your Homeowner Insurance Policy. Please read it carefully. Thank you for insuring with Nationwide.

──────RETAIN THIS PORTION FOR YOUR RECORDS──────

---

**At Nationwide, customer service is a top priority. Whether you are a long time customer or new, we want you to know the high value we place on your business. We consider it a privilege to serve you.**

**NATIONWIDE PROPERTY & CASUALTY INSURANCE CO.**

# **\*\*\*\*\*\*\*\*\*\*THIS IS NOT A BILL\*\*\*\*\*\*\*\*\*\***

## NATIONWIDE 24-HOUR CLAIMS NUMBER: 1-800-421-3535

**\*\*\*\*\*\* SPECIAL NOTICE \*\*\*\*\*\***

Please notify your agent immediately if the mortgage company shown on the Declarations is not correct.

# Life comes at you fast [SM] — be ready with Nationwide[®].

**For Billing or Policy questions:** 1-877-262-0247

**For Hearing Impaired:** TTY 1-800-622-2421

All other questions: APRIL BOWERS AGENCY, INC.
615-883-8183



These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the **other coverages** and **additional coverage options**.

**Policy Number:**
63 41 HO 540510

**Issued:**
NOV 26, 2014

**Policyholder:**
**(Named Insured)**
LARRY WILSON
2734 MOSSDALE DR
NASHVILLE TN 37217-4142

**Policy Period From:**

NOV 21, 2014 to NOV 21, 2015 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

---

**Change Effective Date:**
NOV 24, 2014

**The Following Change(s) Have Been Made To Your Policy:**

This revised Declarations reflects recent changes made to your Insurance Policy.

**Residence Premises Information:**

| 2734 MOSSDALE DR | ONE FAMILY | PROTECTION CLASS 4 |
| NASHVILLE | MASONRY VENEER DWELLING | FD NASHVILLE USD |
| TN 372174142 | YEAR OF CONSTRUCTION 1965 | FS NASHVILLE FS 35 |
| | | PROTECTION TERRITORY 037 |

## SECTION I

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE–A–DWELLING | $ 203,800 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE–B–OTHER STRUCTURES | $ 20,380 | |
| COVERAGE–C–PERSONAL PROPERTY | $ 142,660 | **EXCEPTIONS** |
| COVERAGE–D–LOSS OF USE | $ 203,800 | 1% OF COVERAGE A - DWELLING LIMIT = $ 2,038. THIS DEDUCTIBLE APPLIES TO WINDSTORM OR HAIL LOSSES. |

## SECTION II

| Liability Coverages | Limits Of Liability |
|---|---|
| COVERAGE–E–PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $ 300,000 |
| COVERAGE–F–MEDICAL PAYMENTS TO OTHERS EACH PERSON | $ 1,000 |

H5300

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 16 of 74 PageID #: 19

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
| BOECKH INDEX 0717.5 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ 5,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ 500 |
| CREDIT CARD - FORGERY | $ 1,000 |

**Options Applicable**

| | |
|---|---|
| OPTION-B-GUNS | $ 5,000 |
| OPTION-E-TOOLS | $ 10,000 |
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
| PERSONAL PROPERTY (BRAND NEW BELONGINGS) | |
| OPTION-K-REPLACEMENT COST PLUS | APPLIES |
| DWELLING | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| ALERTING FIRE/BURGLARY ALARM SYSTEM | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ 5,000 |
| WATER BACKUP DEDUCTIBLE $1000 | |
| SINKHOLE | APPLIES |

## PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $ 591.00 |
| SINKHOLE | $ 41.00 |
| WATER BACKUP | $ 8.00 |
| **Annual Premium** | **$ 640.00** |

**Annual Premium Includes Discounts For:**

YEARS WITH PRIOR CARRIER
CLAIM FREE
HOME/CAR
HOME PROTECTIVE DEVICE
ROOF TYPE
RENOVATED HOME

## FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 41-B | Homeowners Policy |
| H-6145 | Sinkhole activity coverage |
| H-6146 | Amendatory Endorsement |
| H-6174 | Mandatory Endorsement |





**Policy Number:**
63 41 HO 540510

**Policyholder:**
**(Named Insured)**
LARRY WILSON

**Issued:**
NOV 26, 2014

**Policy Period From:**
NOV 21, 2014 TO NOV 21, 2015

## ADDITIONAL INTERESTS

**FIRST MORTGAGEE**

US BANK NA
C/O US BANK HOME
MRTG
ISAOA ATIMA
PO BOX 5760
SPRINGFIELD OH 45501-5760
LOAN #2900767424

**Issued By:** NATIONWIDE PROPERTY & CASUALTY INSURANCE CO.
**Countersigned At:** RALEIGH, NC
Prior Declaration Issued: NOV 18, 2014

**Home Office — Columbus, Ohio**
**By:** APRIL BOWERS AGENCY, INC.

### IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For Billing or Policy questions:  1-877-262-0247

For Hearing Impaired: TTY 1-800-622-2421

All other questions:  APRIL BOWERS AGENCY, INC.
615-883-8183

# *Table of Contents*        **Homeowners Policy**

**INSURING AGREEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1
**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .A1-A2
**COVERAGES:**

**Section I - Property Coverages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B1-B6
        Coverage A - Dwelling
        Coverage B - Other Structures
        Coverage C - Personal Property
        Coverage D - Loss of Use
        Additional Property Coverages
        **Perils Insured Against** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1-C2
        **Property Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D1-D3
        **Property Conditions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .E1-E3

**Section II - Liability Coverages** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1-G3
        Coverage E - Personal Liability
        Coverage F - Medical Payments to Others
        Additional Liability Coverages
        **Liability Exclusions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H1-H4
        **Liability Conditions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J1

**POLICY COVERAGE OPTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .K1-K7

**GENERAL POLICY CONDITIONS**
How Your Policy May Be Changed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Concealment or Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Non-Renewal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Cancellation During Policy Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Policy Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Subrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Death . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Additional Insured - Non Occupant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Optional Payment of Premium in Installments . . . . . . . . . . . . . . . . . . . . . . . . . . . L3
Non-Sufficient Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3
Dividends. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

**MUTUAL POLICY CONDITIONS**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

Includes copyrighted material of Insurance Services Offices, with its permission.
Copyright, Insurance Services Office, 1975, 1977.

HO-41-B

# Insuring Agreement

**We** will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages **you** have chosen are shown on the Declarations. This policy applies only to loss which occurs while the policy is in force.

# Definitions

Certain words and phrases used in this policy are defined as follows:

1. "WE", "US" and "OUR" refer to the company shown on the Declarations as the issuing company.

2. "YOU" and "YOUR" refer to the named **insured** shown in this policy who resides at the **residence premises**. These terms also mean **your** spouse who resides at the same **residence premises**.

3. "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis. **Business** also includes any occasional **business** pursuits of an **insured**, including ownership of rental property. It includes home care services regularly provided to a person or persons, other than **insureds** or **insureds**' relatives, for which there is monetary or other compensation. A mutual exchange of home care services is not considered compensation. Exceptions, if any, are noted on the Declarations.

4. "INSURED" means **you** and the following if residents of **your** household at the **residence premises**:
   a) **your** relatives.
   b) any other person under age 21 and in the care of **you** or **your** relatives.

5. "INSURED LOCATION" means:
   a) the **residence premises**.
   b) the part of any other premises, structures, and grounds used by **you** as a residence and shown in the policy; also any of these acquired by **you** during the policy period for **your** use as a residence.
   c) a premises **you** use with premises defined in 5. a) or 5. b).
   d) a part of a premises, not owned by an **insured**, where an **insured** is temporarily living.
   e) vacant land, other than farm land, owned by or rented to an **insured**.
   f) land, other than farm land, owned by or rented to an **insured** on which a one or two-family dwelling is being built as a residence for an **insured**.
   g) cemetery plots or burial vaults of an **insured**.
   h) a part of a premises rented on occasion to an **insured** for purposes other than **business**.

6. "MOTOR VEHICLE" means:
   a) a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to **motor vehicle** registration.
   b) a trailer or semi-trailer designed for travel on public roads and subject to **motor vehicle** registration.
   c) any vehicle while being towed by or carried on a vehicle defined in 6. a) or 6. b).

7. "RESIDENCE PREMISES" means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated.

8. "AIRCRAFT" means any machine or device capable of atmospheric flight, except models.

A1

9. "ACTUAL CASH VALUE" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

10. "FOUNDATION" means a building's substructure including substructural walls, i.e., basement walls, crawl space walls, etc.

11. "BIOLOGICAL DETERIORATION OR DAMAGE" meaning damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.



# Section I
# Property Coverages

## Coverage Agreements

### COVERAGE A — DWELLING

**We** cover:

1.  the dwelling on the **residence premises** used mainly as **your** private residence, including attached structures and attached wall-to-wall carpeting.

2.  materials or supplies on or adjacent to the **residence premises** for use in construction, alteration or repair of:
    a) the dwelling; or
    b) Coverage B — Other Structures.

**We** do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.


### COVERAGE B — OTHER STRUCTURES

**We** cover other structures on the **residence premises**. They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

**We** do not cover:

1.  other structures used in whole or in part for **business** purposes.

2.  other structures rented or held for rental to anyone, unless used solely as a private garage.

3.  land or the replacement, rebuilding, restoration, stabilization or value of such land.


### COVERAGE C — PERSONAL PROPERTY

**We** cover personal property owned or used by an **insured** at the **residence premises**. At **your** request, **we** will cover personal property owned by others. It must be on the part of the **residence premises** occupied by an **insured**. This extension of coverage does not increase the limit of liability.

**Our** limit of liability for personal property while away from the **residence premises** is 10 percent of the limit of liability for Coverage C or $1,000, whichever is greater. This 10 percent limitation does not apply to personal property:

1.  removed from the **residence premises** due to a covered loss;

2.  in transit to and from, or while in a newly acquired principal residence for 30 days. The 30 days start right after **you** begin to move the property; or

3.  stored in a commercial storage facility up to 180 days. The 180 days start when **you** begin to move the property. A commercial storage facility does not include a self-storage unit.

**SPECIAL LIMITS OF LIABILITY.** Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

B1

The following special limits apply only to theft losses:

1. $1,000 for jewelry, watches, furs, and precious and semi-precious stones.

2. $1,000 for guns, including accessories.

3. $1,000 for cameras (film, digital or video), including accessories. It does not include cameras used in **business**.

4. $2,500 for silverware, silver-plated ware, goldware, gold-plated ware, and pewterware.

5. $1,000 for tools not used in **business**. This limit does not apply to lawn and garden tools used to service the **residence premises**.

The following special limits apply to all covered losses:

6. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins, stored value cards, smart cards, gift certificates and medals.

7. $1,000 for securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets.

8. $3,000 for computers, including hardware and software accessories, operating software, application software or other similar software, which can be replaced with like kind and quality on the retail market. This includes electronic storage media such as, but not limited to, tapes or diskettes. Stored data is not covered.

9. $500 for **business** property on the **residence premises** except computers including their hardware and software described above.

10. $1,000 for watercraft and outboard motors, including trailers, furnishings and equipment.

11. $1,000 for utility type trailers not used with watercraft.

12. $1,000 for manuscripts, regardless of the medium.

**PROPERTY NOT COVERED. We** do not cover:

1. articles separately described and specifically insured in this or any other insurance.

2. animals, birds or fish.

3. house or travel trailers.

4. **motor vehicles** or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:

    a) their parts or equipment, whether attached to or separated from the **motor vehicle** or motorized land conveyance; or

    b) accessory equipment; or

    c) any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the **motor vehicle** or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most **we** will pay is $200 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril.

    **We** do cover vehicles or conveyances not subject to motor vehicle registration which are:

    a) used solely to service the **insured's** residence;

    b) designed to assist the handicapped; or

    c) a motorized golf cart while being operated to or from, or on the premises of a golf course.

5. **aircraft** and parts.

6. property of roomers, boarders, and other tenants. Personal property, at the **residence premises**, belonging to roomers and boarders related to an **insured** is covered.

Case 3:16-cv-00902 Document 1-1 Filed 05/19/16 Page 23 of 74 PageID #: 26

7. property in an apartment regularly rented or held for rental to others by an **insured**.
8. property rented or held for rental to others away from the **residence premises**.
9. **business** property away from the **residence premises**.

## COVERAGE D — LOSS OF USE

**We** cover, subject to the coverage limit which is the total limit, all of the following:

1. **Additional Living Expense.** If a covered loss requires **you** to leave the **residence premises**, **we** will pay the required increase in living expenses **you** incur to maintain **your** normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if **you** permanently relocate, for the shortest time required for **your** household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

2. **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the **residence premises** rented to others or held for rental, **we** will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the **residence premises** is uninhabitable. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

3. **Prohibited Use.** If a civil authority prohibits **your** use of the **residence premises** because of direct damage to neighboring premises by a peril insured against in this policy, **we** will pay the resulting loss, for up to two weeks while use is prohibited, for:
   a) Additional Living Expense; and
   b) Fair Rental Value.

**We** do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an **insured's business**, whether conducted on or off any **insured location**.

No deductible applies to this coverage.

# *Additional Property Coverages*

These additional property coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal. We** will pay reasonable expense **you** incur removing debris of covered property, if the peril causing the loss is covered. This includes debris of trees that cause damage to covered property or covered structures, or that obstruct access to covered structures if such access is necessary to repair or replace the structure. **We** will pay only to move away from, or off of, covered property or covered structures, the debris of trees that cause damage to covered property or restrict access. An additional five (5) percent of the limit of liability for the damaged property will be available when the amount payable for the property loss plus the debris removal expense exceeds the limit of liability.

2. **Live Tree Debris Removal.** In the event of a loss, **we** will also pay the reasonable expense **you** incur for the removal of live tree debris from the **residence premises**, that does not cause damage to covered property or covered structures. The most **we** will pay is $500, regardless of the number of

B3

trees requiring removal, for any one loss. Loss must be the result of a Coverage C Perils Insured Against. This is an additional amount of coverage.

3. **Reasonable Repairs. We** will pay reasonable cost **you** incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. This expense is included in the limit of liability applying to the damaged property.

4. **Trees, Shrubs, Plants, and Lawns. We** cover trees, shrubs, plants, or lawns on the **residence premises** for loss caused by the following perils: fire and lightning; explosion; riot and civil commotion; **aircraft**; vehicles not owned or operated by a resident of the **residence premises**; vandalism or malicious mischief; collapse of a building; or, theft. Liability is limited to five (5) percent of the Coverage A limit of liability for all trees, shrubs, plants and lawns. It is limited to $500 for one tree, shrub or plant. This coverage may increase the limit of liability.

   **We** do not cover property grown for **business** purposes.

5. **Fire Department Service Charge. We** will pay up to the amount stated on the Declarations for **your** liability under contract or agreement for customary fire department charges. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. No deductible applies to this coverage.

6. **Property Removed.** Covered property removed from a premises because it is in danger from a covered peril is covered for direct loss from any cause. The property is covered while being removed and for 30 days while removed. After 30 days the property is covered for direct loss from a peril insured against. This does not change the coverage limit.

7. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. We** will pay up to the amount stated on the Declarations for:

   a) the legal obligation of an **insured** to pay theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an **insured's** name. However, **we** do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.

   b) loss to an **insured** caused by forgery or alteration of a check or negotiable instrument.

   c) loss to an **insured** through good faith acceptance of counterfeit United States or Canadian paper currency.

   All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

   **We** do not cover loss arising out of the **business** pursuits, or dishonesty of an **insured**.

   **We** do not cover loss arising out of identity theft or identity fraud including a covered act as outlined in subsections a), b), or c) of this section.

   No deductible applies to this coverage.

   **We** may make any investigation and settle any claim or suit as **we** decide is appropriate. **Our** obligation to defend a claim or suit ends when the amount **we** pay for the loss equals **our** limit of liability.

   If a claim is made or a suit is brought against an **insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, **we** will provide defense at **our** expense by counsel of **our** choice.

   **We** may defend at **our** expense an **insured** or an **insured's** bank against a suit for the enforcement of payment under the forgery coverage.

   **Our** duty to defend does not apply to identity theft or identity fraud.

B4

8. **Inflation Protection Coverage.** If the Declarations show this coverage applies, **we** will adjust the limit of liability on the Declarations for Section I — Coverages. The limit of liability will change as the appropriate index, shown on the Declarations, changes.

   **We** will compare the latest available index to the index as of the effective date of this policy. **We** will adjust the limit of liability by the percentage change in the index. It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

   If **you** request a change in the dwelling limit of liability, the effective date of this coverage will be amended to the effective date of that change.

   This coverage will not reduce **our** limit of liability during the current policy period below that for which premium has been paid.

9. **Consequential Loss. We** cover **insured** personal property in a building at the **residence premises** for loss due to temperature change resulting from power interruption. There must be damage to the **residence premises** caused by a covered peril.

10. **Refrigerated Property.** If a power interruption occurs, off the **residence premises, we** will pay up to a maximum of $500 for loss of contents in a freezer or refrigerator due to temperature changes. **You** must use all reasonable means to protect the covered property from damage or this coverage is void.

11. **Lock Replacement. We** will pay up to $100 to replace the exterior door locks on **your residence premises** with deadbolt locks or to rekey the lock cylinders of existing deadbolt locks, whichever is less. This coverage applies only if the keys to **your residence premises** are stolen.

    No deductible applies to this coverage.

12. **Collapse. We** cover direct physical loss to covered property described in Coverages A, B and C caused by the complete **collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **collapse** if:

    a) it is standing but in danger of falling down or caving in;

    b) it is standing but has separated from any other part of the building;

    c) it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    The **collapse** must be sudden and accidental and caused by one or more of the following:

    a) one of the Coverage C — Personal Property perils insured against;

    b) hidden decay of a supporting or weight bearing building structural member;

    c) hidden insect or vermin damage of a supporting or weight bearing building structural member;

    d) weight of:

        (1) contents, equipment, animals or people; or

        (2) rain, ice, sleet or snow which collects on the roof; or

    e) defective material or methods used in the construction, repair or remodeling or renovation if the **collapse** occurs in the course of work being done.

    The presence of any decay, insect or vermin damage must be unknown to an **insured** prior to **collapse.**

    Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, **foundation**, retaining wall, bulkhead, pier, wharf, or dock is not included under items b), c), d), or e) unless the loss is a direct result of the **collapse** of a building.

    The limit of liability applying to the covered property is not increased by this coverage.

B5

13. **Household Supplies.** **We** will pay up to a maximum of five (5) percent of the Coverage A — Dwelling coverage limit for direct physical loss to property described in Coverages A and B arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage, leakage, or escape of household supplies on the **residence premises**. Household supplies includes items currently in use or in **your** possession at the **residence premises**, in normal household quantities such as household cleaning supplies, pesticides, and other similar items.

   **Section I — Property Exclusion 1.j)** does not apply to any loss covered under this **Additional Property Coverage, Household Supplies**. In no event, however, will **we** ever cover:

   a) loss arising out of materials containing asbestos, lead, formaldehyde, fuel or petroleum products; or

   b) any fee, assessment or expense of any governmental authority; or

   c) loss arising out of household supplies possessed or used:

      (1) for **business** purposes;

      (2) for illegal purposes;

      (3) by contractors; or

      (4) on driveways or walkways.

14. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in **biological deterioration or damage** to property covered under Coverages A, B, and C, **we** will pay, up to the amount shown on the Declarations, for:

   a) the cost to clean up, remove and dispose of the **biological deterioration or damage** to covered property;

   b) the cost to tear out and replace any part of the building or other covered property needed to gain access to the **biological deterioration or damage**;

   c) the cost of testing which is performed in the course of clean up and removal of the **biological deterioration or damage** from the **residence premises**; and

   d) additional living expenses **you** may incur, as outlined under Coverage D, that results from items a), b) or c) above.

   The coverage amount shown on the Declarations for this Additional Property Coverage is the most **we** will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if **you** report the **biological deterioration or damage** to **us** within 180 days of having first discovered the **biological deterioration or damage**.

   The covered cause of loss that causes or results in **biological deterioration or damage** to covered property must have occurred during the policy period.

   This is an additional amount of coverage.

B6

# *Perils Insured Against*

(Section I)

## *Covered Causes of Loss*

### COVERAGE A — DWELLING and
### COVERAGE B — OTHER STRUCTURES

**We** cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I — Property Exclusions.

### COVERAGE C — PERSONAL PROPERTY

**We** cover accidental direct physical loss to property described in Coverage C caused by the following perils except for losses excluded under Section I — Property Exclusions:

1. fire or lightning.

2. windstorm or hail.

    Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. This peril includes loss to:

    a) rowboats and canoes inside or outside a building.

    b) other watercraft and outboard motors, including their trailers, furnishings, and equipment, while inside a fully enclosed building.

3. explosion.

4. riot or civil commotion.

5. **aircraft**, missiles propelled and spacecraft.

6. vehicles.

7. sudden and accidental damage from smoke. This does not include loss due to smoke from farm or industrial operations.

8. vandalism and malicious mischief.

    This peril does not include loss to property on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

9. theft, including attempted theft. Loss of property from a known location when it is likely the property was stolen is covered. Loss of precious or semi-precious stones from their settings is not covered. This peril does not include loss caused by any theft:

    a) committed by an **insured**.

    b) in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied.

    c) of money, securities, stamps, jewelry, watches, gems, articles of gold, silver, or platinum from any part of a **residence premises** usually occupied solely by an **insured** while rented to other than an **insured**.

C1

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 28 of 74 PageID #: 31

This peril does not include loss caused by theft that occurs away from the **residence premises** of:

a) property while at any other residence owned by, rented to, or occupied by an **insured**, except while an **insured** is temporarily living there. Property of an **insured** student is covered at a residence away from home if the student has been there within 45 days prior to the loss.

b) trailers and campers.

c) watercraft and outboard motors, including their furnishings and equipment.

10. falling objects. This peril does not include loss to:

a) property in a building, unless the roof or an exterior wall of the building is first damaged by a falling object.

b) the falling object itself.

11. weight of ice, snow, or sleet which causes damage to property in a building.

12. accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. This peril does not include loss:

a) caused by or resulting from water that backs up from outside the dwelling's plumbing system and enters through sewers or drains; or water entering or overflowing a sump pump, sump pump well or other system designed to remove subsurface water drained from the **foundation** area except as may be provided elsewhere in this policy or by endorsement.

b) due to continuous or repeated seepage or leakage of water, steam or moisture which occurs over a period of time and results in deterioration, corrosion, or rust.

c) due to freezing except as provided by the peril of freezing.

d) to the system or appliance from which the water, steam or moisture escaped.

13. accidental electrical damage to electrical appliances, devices, fixtures and wiring. This peril does not include loss to transistors and tubes including picture tubes.

14. sudden and accidental tearing apart, cracking, bursting, burning or bulging of:

a) a steam or water heating system.

b) a fire protective sprinkler system.

c) an air conditioning system.

d) an appliance for heating water.

Freezing is not covered under this peril.

15. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance. This peril does not include loss on the **residence premises** while unoccupied, vacant or under construction unless **you** have used reasonable care to:

a) maintain heat in the building; or

b) shut off the water supply and drain the system and appliances of water.

Case 3:16-cv-00902 Document 1-1 Filed 05/19/16 Page 29 of 74 PageID #: 32

# *Property Exclusions*

1. **We** do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

   a) Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking. Volcanic eruption means: eruption; explosion; or discharge from a volcano.

   Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

   b) Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

   (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

   (2) water or water-borne material which:

      (a) backs up through sewers or drains from outside the dwelling's plumbing system; or

      (b) overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

   (3) water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, **foundation**, swimming pool, or other structure.

   Resulting direct loss by fire, explosion, or theft is covered.

   c) Neglect, meaning neglect of the **insured** to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

   d) War or Warlike Acts. This includes insurrection, rebellion or revolution. Discharge of a nuclear weapon is considered a warlike act even if accidental.

   e) Nuclear Hazard, meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these. Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in Section I.

   f) Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an **insured**.

   g) Intentional Acts, meaning loss resulting from an act committed by or at the direction of an **insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**.

   h) Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

   i) **Collapse**, except as provided by Section I — Additional Property Coverages — **Collapse**.

D1

    j) Contamination or Pollution, meaning any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

        (1) solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;

        (2) vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;

        (3) fuel oil and other petroleum products; or

        (4) any other waste materials or other irritants, contaminants or pollutants.

    k) Loss Assessments, unless, optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

    l) Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.

        Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.

    m) **Biological deterioration or damage,** except as provided by Section I — Additional Property Coverages — **Biological Deterioration or Damage Clean Up and Removal.**

2. **We** do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

    a) A fault, weakness, defect or inadequacy in the:

        (1) specifications, planning, zoning;

        (2) design, workmanship, construction, materials;

        (3) surveying, grading, backfilling;

        (4) development or maintenance;

        of any property on or off the **residence premises**, whether intended or not.

    b) Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.

    c) Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. of this Section.

3. **We** do not cover loss to property described in Coverages A and B resulting directly from any of the following:

    a) freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

        This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless **you** have used reasonable care to:

        (1) maintain heat in the building; or

        (2) shut off the water supply and drained the system and appliance of water.

    b) freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

        (1) fence, pavement, patio or swimming pool;

        (2) **foundation**, retaining wall, or bulkhead; or

        (3) pier, wharf or dock.

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 31 of 74 PageID #: 34

c) theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

d) vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

e) continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic protective sprinkler system; household appliance; or plumbing system that results in deterioration or rust. Continuous or repeated seepage or leakage from, within, or around any shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings or floors, is also excluded.

If loss caused by water or steam is not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. **We** do not cover loss to the system or appliance from which the water or steam escaped.

f) (1) wear and tear, marring, deterioration;

(2) inherent vice, latent defect, mechanical breakdown;

(3) smog, rust;

(4) smoke from agricultural smudging or industrial operations;

(5) release, discharge, or dispersal of contaminants or pollutants;

(6) settling, cracking, shrinking, bulging or expansion of pavements, patios, **foundations**, walls, floors, roofs or ceilings;

(7) birds, vermin, rodents, insects or domestic animals. Resulting breakage of glass constituting part of a covered building is covered;

(8) root growth, movement or action;

(9) mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

(10) mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

If any of items f)(1) through (8) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, we cover loss caused by the water not otherwise excluded. **We** also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. **We** do not cover loss to the system or appliance from which the water escaped.

Under exclusions 3.a) through 3.f), any loss that follows is covered unless it is specifically excluded.

D3

# *Property Conditions*

1.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, **we** will not be liable:

    a)  to the **insured** for more than the **insured's** interest.

    b)  for more than the limit of liability.

2.  **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy is the amount of loss paid by the **insured**. **We** pay for covered loss above the deductible amount.

3.  **Your Duties after Loss.** In case of loss, **you** must:

    a)  give immediate notice to **us** or **our** agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. If loss is caused by or results from the peril of hail, loss must be reported to **us** or **our** agent within 12 months of the loss event.

    b)  protect the property from further damage. **You** must make repairs required to protect the property and keep a record of repair expenses.

    c)  as often as **we** reasonably require:

        (1)  show **us** the damaged property; and

        (2)  provide records and documents **we** request and permit **us** to make copies.

        (3)  submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

    d)  submit to **us**, within 60 days after **we** request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

        (1)  the time and cause of loss.

        (2)  interest of the **insured** and all others in the property involved and all liens on the property.

        (3)  other insurance that may cover the loss.

        (4)  changes in title or occupancy of the property during the term of the policy.

        (5)  specifications of any damaged property and detailed estimates for repair of damage.

        (6)  a list of damaged personal property showing in detail the quantity, description, **actual cash value**, and amount of loss. Attach all bills and receipts that support the figures.

        (7)  receipts for additional living expenses and records supporting the fair rental value loss.

        (8)  evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

4.  **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:

    a)  **actual cash value** at the time of loss, the amount not to exceed **actual cash value**, needed to repair or replace:

        (1)  personal property and structures that are not buildings;

        (2)  carpeting (including wall-to-wall) and cloth awnings;

E1

      (3) outdoor antennas, whether or not attached to the building;

      (4) home appliances, unless built in as a part of the dwelling.

  b) the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on equivalent construction and use on the same premises except:

      (1) **we** will pay no more than the **actual cash value** of the damage until the repair or replacement is made when the cost to repair or replace the damage is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.

      (2) when **you** claim loss or damage to buildings on an **actual cash value** basis. **You** may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.

      (3) if **you** choose not to repair or replace, **we** will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.

5. **Loss Payment. We** will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

  a) In case of loss to a pair or set, **we** may elect to:

      (1) repair or replace a part to restore the pair or set to its value before the loss; or

      (2) pay the difference between **actual cash value** of the property before and after the loss.

  b) At **our** option, **we** may repair or replace any part of the damaged property with equivalent property, providing **we** give **you** written notice within 30 days after receiving **your** signed, sworn proof of loss.

  c) **We** will pay **you** unless some other person is named in this policy to receive payment. Payment will be made within 60 days after **we** receive **your** proof of loss and:

      (1) reach agreement with **you**; or

      (2) there is an entry of a final judgment; or

      (3) there is a filing of an appraisal award with **us**.

  d) After **we** have paid for a loss by theft or disappearance of covered property, **we** have the right to all or part of any recovered property. **You** must protect these rights and inform **us** of any recovery. If **you** wish to retain the recovered property, **our** loss payment will be adjusted by the value of such property.

  e) After **we** have paid for a loss, **we** have the right to all or part of any salvageable property. **We** may permit **you** to keep the damaged property but **we** will reduce the amount of the loss paid to **you** by the value of the retained damaged property.

6. **Appraisal. If you** and **we** fail to agree on the amount of loss, either can demand that the amount be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select a competent, impartial umpire.

  The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire

will be paid equally by **you** and **us**. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **actual cash value**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between **you** and **us**. The appraisal award cannot be used by either **you** or **us** in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon **you** and **us**. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us**.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. Any action must be started within one year after the date of loss or damage.

9. **Abandonment of Property. We** need not accept property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and **you**, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If **we** deny **your** claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a) notifies **us** of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

    b) pays premium due under this policy on **our** demand, if **you** neglected to pay the premium.

    c) submits a signed, sworn proof of loss within 60 days after receiving notice from **us** of **your** failure to do so. Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

    If **we** cancel the policy, **we** will notify the mortgagee at least 10 days before the cancellation takes effect. If **we** pay the mortgagee for loss and deny payment to **you**:

    a) **we** are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b) at **our** option, **we** may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, **we** will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling **your** property for a fee.

12. **Glass Replacement. We** will replace covered glass using safety glazing materials when required by ordinance or law.

E3



# Section II
# Liability Coverages

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. **Bodily injury** does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. "PROPERTY DAMAGE" means physical injury to or destruction of tangible property. This includes its resulting loss of use.

3. "RESIDENCE EMPLOYEE" means an employee of an **insured** who performs duties in connection with maintenance or use of the **residence premises**. This includes household or domestic services or similar duties elsewhere not in connection with the **business** of an **insured**.

4. "OCCURRENCE" means **bodily injury** or **property damage** resulting from an accident, including continuous or repeated exposure to the same general condition. The **occurrence** must be during the policy period.

5. "INSURED" means **you** and the following persons if residents of **your** household at the **residence premises**:

   a) **your** relatives;

   b) any other person under age 21 and in the care of **you** or **your** relatives;

   c) a person or entity legally responsible for animals or covered watercraft that are either owned by or in the custody of an **insured**. A person or entity using or having custody of these animals or watercraft in the course of **business**, or without permission of the owner, is not an **insured**.

   d) any person operating, utilizing, or maintaining a covered vehicle while engaged in **your** employment or that of an **insured**.

# Coverage Agreements

## COVERAGE E — PERSONAL LIABILITY

**We** will pay damages an **insured** is legally obligated to pay due to an **occurrence** resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. **We** will provide a defense at **our** expense by counsel of **our** choice. **We** may investigate and settle any claim or suit. **Our** duty to defend a claim or suit ends when the amount **we** pay for damages equals **our** limit of liability.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

G1

## COVERAGE F — MEDICAL PAYMENTS TO OTHERS

**We** will pay the necessary medical and funeral expenses incurred within three years after an accident causing **bodily injury**. This coverage does not apply to **you**. It does not apply to regular residents of **your** household. It does apply to **residence employees**. Payment under this coverage is not an admission of **our** or an **insured's** liability. This coverage applies as follows:

1. to a person on the **insured location** with consent of an **insured**.

2. to a person off the **insured location**, if the **bodily injury**:
   a) arises out of a condition in the **insured location**.
   b) is caused by the activities of an **insured**.
   c) is caused by a **residence employee** of an **insured**.
   d) is caused by an animal owned by or in the care of an **insured**.

# *Additional Liability Coverages*

**We** will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

1. **Claims Expenses. We** will pay:
   a) expenses **we** incur and costs taxed against an **insured** in a legal action **we** defend.
   b) premiums on bonds required in a suit **we** defend. This does not include bond amounts greater than the Coverage E limit of liability. **We** are not obligated to apply for or furnish a bond.
   c) reasonable expenses incurred by an **insured** at **our** request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for assisting **us** in the defense of a claim or suit.
   d) post-judgment interest. This must accrue after entry of the judgment. It must accrue before **we** pay or deposit in court that part of the judgment which does not exceed the coverage that applies.

2. **First Aid Expenses. We** will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. **We** will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others. We** will pay for **property damage** to property of others caused by an **insured** regardless of legal liability. **We** will pay up to $1,000 per **occurrence**, but not more than the smallest of the replacement cost or the cost to repair the damaged property. **We** will not pay for **property damage**:
   a) to property covered under Section I.
   b) caused intentionally by an **insured** who is age 13 or older.
   c) to property owned by or rented to an **insured**, a tenant of an **insured**, or a resident in **your** household.
   d) arising out of:
      (1) **business** pursuits.
      (2) an act or omission in connection with a premises owned, rented, or controlled by an **insured**, other than an **insured location**.
      (3) the ownership, maintenance or use of a **motor vehicle**, **aircraft**, or watercraft.

G2

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 37 of 74 PageID #: 40

4. **Accidental Death Benefits.** **We** will pay $500 ($2,000 if an adult) to the estate of the deceased for accidental loss of life of an **insured**. Death must be solely caused by accident. The adult benefit applies to an **insured** age 18 or older. Accident means an event which is sudden, unforeseen, and unintended. Death must be within 90 days of the accident. It must result directly from **bodily injury** suffered on the **residence premises**. Death must be independent of other causes. Coverage ends for an **insured** on the nearest policy renewal date to such **insured's** 65th birthday. **We** will not pay where death results directly or indirectly, wholly or in part, from any of the following causes:

   a) disease, bodily or mental illness;

   b) medical or surgical treatment for disease, bodily or mental illness;

   c) infection unless it results from visible wounds. It must be the result of an accident which happened at the **residence premises**;

   d) suicide, whether the deceased was sane or insane;

   e) sensitivity to drugs or an overdose of drugs;

   f) taking poison or inhaling gas, voluntarily;

   g) war or an act of war, declared or undeclared. It does not matter whether the **insured** is in military service or not.

G3

# *Liability Exclusions*

(Section II)

1. Coverage E--Personal Liability and Coverage F--Medical Payments to Others do not apply to **bodily injury** or **property damage:**

   a) caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct.

      This exclusion 1.a) does not apply to:

      (1) corporate punishment of pupils.

      (2) **bodily injury** or **property damage** caused by an **insured** trying to protect person or property.

   b) caused by or resulting from an act or omission which is criminal in nature and committed by an **insured**.

      This exclusion 1.b) applies regardless of whether the **insured** is actually charged with, or convicted of a crime.

   c) arising out of **business** pursuits of an **insured**.

      This exclusion 1.c) does not apply to:

      (1) activities normally considered non-**business**.

      (2) occasional or part time self-employed **business** pursuits of an **insured** under age 19 years old (age 23 if a full-time student).

      (3) an office, school, studio, barber or beauty shop on the **residence premises** if noted on the Declarations.

      (4) home care services provided by or at the direction of an **insured** on or from the **residence premises** if noted on the Declarations.

   d) arising out of the rental or holding for rental of any part of any premises by an **insured**. Exceptions, if any, are noted on the Declarations.

      This exclusion 1.d) does not apply to the rental or holding for rental of part of **your residence premises:**

      (1) occasionally for the exclusive use as a residence.

      (2) unless intended as a residence by more than two roomers or boarders.

      (3) as a private garage.

   e) arising out of any professional liability except teaching.

   f) arising out of premises owned or rented to an **insured** but not an **insured location**.

      This exclusion 1.f) does not apply to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

   g) arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or the negligent supervision by an **insured** of; or statutorily imposed liability on an **insured** related to the use of:

      (1) an **aircraft**.

      (2) a **motor vehicle** or all other motorized land conveyance owned by or operated by, or rented or loaned to an **insured**.

H1

This exclusion 1.g)(2) does not apply to:

(a) a vehicle owned by an **insured** and designed for recreation off public roads while on an **insured location**.

(b) a motorized golf cart while being operated to or from, or on the premises of a golf course.

(c) a vehicle not subject to **motor vehicle** registration which is:

    i)   used to service an **insured's** residence; or

    ii)  designed for assisting the handicapped.

(d) a vehicle in dead storage on an **insured location**. Dead storage means physically prepared for long term storage.

(e) a boat, camp, home or utility trailer not being towed or carried on a vehicle defined in general Definition 6.a).

(f) **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

(3) a watercraft owned or operated by, or rented or loaned to an **insured**:

(a) if the watercraft is a personal watercraft powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than 50 horsepower.

(b) if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length.

(c) while rented to others.

(d) while being used to carry persons or property for a fee.

(e) while being used without an **insured's** permission.

(f) while being used in an official race or speed test. This exclusion does not apply to sailboats.

(g) if it is an airboat, air cushion or similar type watercraft.

This exclusion 1.g)(3) does not apply:

(1) while the watercraft is stored.

(2) when an **insured** rents or borrows a nonowned outboard motor boat for eight (8) or less consecutive days.

(3) to **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured**.

h) caused by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear weapon is a warlike act, even if accidental.

i) resulting from an **insured** transmitting a communicable disease.

j) arising from the ingestion, inhalation or absorption of lead or lead compounds.

k) arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage or escape of:

(1) solid, liquid, gaseous, or thermal irritants or contaminants, including smoke (except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace), vapors, soot, fumes, acids, alkalis, toxic chemicals and wastes, toxic liquids or toxic gases;

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 40 of 74   PageID #: 43

(2) fuel oil and other petroleum products; or

(3) any other waste materials or other irritants, contaminants or pollutants.

This exclusion 1.k) does not apply to **bodily injury** arising out of routine lawn and garden care of an **insured location**.

l) resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

m) resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

This exclusion 1.m) does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

n) **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under:

(1) a workers' compensation;

(2) an unemployment compensation;

(3) a non-occupational or occupational disease;

(4) a disability benefits;

or any similar law.

o) caused by any of the following animals owned by or in the care of an **insured**:

(1) the following types of pure bred dogs or a mix breed including one of these types:

(a) American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

(b) Doberman Pinschers;

(c) Rottweilers;

(d) Chow Chows; or

(e) Presa Canarios;

(2) wolf hybrids;

(3) dogs that have been trained to attack persons, property or other animals; or dogs that have been trained to guard persons or property;

(4) any dog, used in any manner, as a fighting dog or bred specifically for fighting;

(5) any dog with a prior history of:

(a) causing **bodily injury** to a person; or

(b) attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

p) arising out of **biological deterioration or damage.**

2. Coverage E — Personal Liability does not apply to:

a) liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

b) liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with any **business** of an **insured**.

c) **property damage** to property owned, produced or distributed by an **insured**.

H3

    d) **property damage** to property rented to, occupied or used by, or in the care of an **insured**.

       This exclusion 2.d) does not apply to **property damage**:

       (1) caused by fire, smoke, or explosion; or

       (2) to house furnishings or premises rented to, occupied or used by or in the care of an **insured** for which the **insured** is legally liable.

    e) **bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy; or would be an **insured** but for its termination upon exhaustion of its limit of liability.

    f) **bodily injury** to an **insured** as defined in Section II — Liability Definitions 5.a) and 5.b).

3. Coverage F — Medical Payments to Others does not apply to **bodily injury**:

    a) to a **residence employee** if it occurs off the **insured location**. It does apply if the **bodily injury** arises out of the **residence employee's** employment by an **insured**.

    b) from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 42 of 74 PageID #: 45

# *Liability Conditions*

1. **Limits of Liability.** **Our** total liability under Coverage E for all damages resulting from one **occurrence** will not exceed the limit for Coverage E shown on the Declarations. This is true regardless of the number of **insureds**, claims made or persons injured.

   **Our** total liability under Coverage F for all medical expense for **bodily injury** to one person resulting from one accident will not exceed the limit for Coverage F shown on the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition does not increase **our** limit of liability for one **occurrence**.

3. **Duties after Loss.** In case of a loss, **you** must perform the following duties. **You** must cooperate with **us** in seeing that these duties are performed.

   a) give notice to **us** or **our** agent as soon as practicable setting forth:

      (1) identity of the policy and **insured**.

      (2) time, place, and facts of the accident or **occurrence**.

      (3) names and addresses of the claimants and witnesses.

   b) immediately forward to **us** every document relating to the accident or **occurrence**.

   c) at **our** request, assist in:

      (1) making settlement.

      (2) enforcing a right of contribution or indemnity against a person or entity who may be liable to an **insured**.

      (3) conducting suits, and attending hearings and trials.

      (4) giving evidence and asking witnesses to attend.

   d) under the coverage — Damage to Property of Others:

      (1) submit to **us**, within 60 days after the loss, a sworn proof of loss; and

      (2) exhibit the damaged property, if within the **insured's** control.

   e) the **insured** shall not, except at the **insured's** own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the **bodily injury**.

   f) Under the coverage — Accidental Death Benefits:

      (1) **you** agree to authorize **us** to receive medical reports and copies of supporting records;

      (2) **we** have the right and opportunity to make an autopsy where not forbidden by law.

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone on behalf of the injured person will:

   a) give **us** written proof of claim, under oath if required, as soon as possible.

   b) authorize **us** to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician **we** select. This may be as often as **we** require with good reason.

5. **Suit Against Us.** No action can be brought against **us** unless there has been full compliance with the policy provisions. No one has a right to join **us** as party to an action against an **insured**. No action with respect to Coverage E can be brought against **us** until the obligation of the **insured** has been determined by final judgment or agreement signed by **us**.

6. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** will not relieve **us** of **our** obligations under this policy.

J1

# *Policy Coverage Options*

The following options apply only if they are indicated on the Declarations. They are subject to all provisions of this policy except as modified herein.

**Option A.**  **Jewelry.** The coverage for jewelry, watches and furs is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1. wear and tear or mechanical breakdown.
2. gradual deterioration or inherent vice.
3. insects or vermin.
4. losses excluded under Section I — Property Exclusions that apply to personal property.

**Option B.**  **Guns.** The coverage for guns, including accessories is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.
2. insects or vermin.
3. refinishing, renovating or repairing.
4. dampness or temperature extremes, rust, fouling or explosion.
5. inherent defect or faulty manufacture.
6. breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.
7. losses excluded under Section I — Property Exclusions that apply to personal property.

**Option C.**  **Cameras.** The coverage for cameras (film, digital or video), including accessories, is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.
2. renovating or repairing, rust, dampness or temperature extremes.
3. inherent defect or faulty manufacture, insect or vermin.
4. breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.
5. losses excluded under Section I — Property Exclusions that apply to personal property.

The limits of liability for property covered by **Options A, B or C** are amended as follows:

The option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against.  It is the total limit, with a $1,000 maximum for any one item, for loss by:

1. theft; or
2. a covered peril other than the Coverage C — Personal Property Perils Insured Against.

K1

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 44 of 74 PageID #: 47

**Option D.** **Silverware.** The coverage and limits of liability for silverware, silver-plated ware, goldware, gold-plated ware and pewterware is amended as follows:

**We** will pay for accidental direct physical loss except that caused by:

1. wear and tear, mechanical breakdown or gradual deterioration.

2. renovating or repairing, rust, dampness or temperature extremes.

3. inherent defect or faulty manufacture, insect or vermin.

4. breakage, marring, scratching, or denting; unless caused by fire, thieves or vehicular accident.

5. losses excluded under Section I — Property Exclusions that apply to personal property.

This option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against. It is the total limit for loss by:

1. theft; or

2. a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option E.** **Tools.** The special limit of liability applying to tools is increased to the amount shown on the Declarations.

**Option F.** **Money.** The special limit of liability on money, bank notes, bullion, gold (other than goldware), silver (other than silverware), platinum, coins, stored value cards, smart cards, gift certificates and medals is increased to the amount shown on the Declarations.

**Option G.** **Securities.** The special limit of liability on securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets is increased to the amount shown on the Declarations.

**Option H.** **Computers.** The special limit of liability on computers, including hardware and software accessories is increased to the amount shown on the Declarations.

**Option I.** **Business Property.** The special limit of liability on **business** property is increased to the amount shown on the Declarations. It includes up to $250 of coverage for **business** property off the **residence premises**.

**Option J.** **Extended Replacement Cost Coverage.** Option J does not increase the policy's limit of liability.

1. Loss to the following property shall be settled at replacement cost or the full cost to repair without deduction for depreciation:

   a) property covered under Coverage C — Personal Property.

   b) outdoor antennas, carpeting (including wall-to-wall), home appliances, and awnings.

   **"Replacement cost"** means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When the identical article is no longer available, **replacement cost** shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

   **Our** liability for loss under this coverage shall be the lesser of:

   a) **replacement cost** at the time of loss;

   b) full cost of repair;

K2

    c) any special limits of liability described in this policy or attached by endorsement; or

    d) **our** cost to repair or replace any part of the damaged or stolen property with equivalent property.

**We** will not pay more than the **actual cash value** of the damaged or stolen property until it has been repaired or replaced.

2. **You** may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of the repair cost, **replacement cost**, any special limit of liability that applies or the **actual cash value** of those items. If **you** later decide to repair or replace those items, **you** may make an additional claim within 180 days after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the 180 days, but payment will not be made until proof of repair or replacement is provided to **us**.

3. This coverage does not apply to:

    a) manuscripts, antiques or fine arts which by their inherent nature cannot be replaced with new articles.

    b) memorabilia, souvenirs, collectors' items, and other items whose age and history contribute substantially to their value.

    c) property not maintained in good or workable order.

    d) property which is obsolete or useless to **you** at the time of loss.

The **actual cash value** provisions of this policy apply to the preceding items 3.a) through 3.d).

**Option K.** **Replacement Cost Plus (Dwelling) (Increased Coverage A Limit).** When a loss covered by this policy occurs to the dwelling in which **you** live, located at the **residence premises**, **we** will settle losses, subject to applicable deductibles, according to the policy provisions.

If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A — Dwelling Limit of Liability, **we** will pay up to a maximum of an additional 20% of the Coverage A limit for the additional cost. This additional amount applies only to the dwelling insured under this policy identified as the **residence premises** on the Declarations. This coverage does not increase or affect any other coverage limit or limit of liability in this policy. This additional payment is subject to the following provisions:

**SPECIAL CONDITIONS:**

**You** must:

1. insure the dwelling in which **you** live, located at the **residence premises**, to 100% of the cost to repair or replace it; and

2. accept the annual adjustment in the Coverage A — Dwelling limit of liability due to Inflation Protection Coverage and pay the premium charged; and

3. notify **us** within 90 days of the start of any physical improvements or additions which increase the replacement cost value of **your** dwelling by $5,000 or more and pay any additional premium due.

**You** must comply with these special conditions or **we** will pay no more than the policy limit in effect on the date of loss, less applicable deductibles.

K3

**ORDINANCE OR LAW EXCLUSION**

The additional amount provided by this option does not cover any increased cost resulting from enforcement of any ordinance or law regulating the construction, use or repair of any property, or requiring the tearing down of any property, including the cost of removing such debris.

**Option L.** **Protective Device Credit.** For a premium credit, **we** acknowledge the installation of qualified protection devices on the **residence premises**.

**You** agree to:

1. maintain these devices in working order; and

2. notify **us** promptly, of any changes made in the devices or if they are removed.

**Option M.** **Personal Injury Coverage** under **Coverage E — Personal Liability**, the definition of **bodily injury** is amended to include **personal injury**.

**Personal Injury** means injury as a result of:

1. false arrest, false imprisonment, wrongful eviction, or wrongful entry;

2. wrongful detention, malicious prosecution, or humiliation;

3. libel, slander, defamation of character; or

4. invasion of rights of privacy.

Section II — Liability Exclusions do not apply to **personal injury. Personal injury** coverage does not apply to:

1. liability assumed by an **insured** under a contract or agreement;

2. injury caused by violation of a penal law or ordinance if committed by or with the knowledge or consent of an **insured**;

3. injury sustained by a person as a result of an offense directly or indirectly related to that person's employment by the **insured**;

4. injury arising out of or in connection with **business** pursuits of an **insured**;

5. injury arising out of any professional liability;

6. injury resulting from an **insured** transmitting a communicable disease, including injury arising from the possibility of such transmission;

7. civic or public activities performed for pay, other than reimbursement of expenses, by an **insured**; or

8. injury to an **insured** as defined in general Definitions 4.a) and 4.b).

**Option N.** **Loss Assessment Coverage.**

**We** agree to pay **your** share of an assessment charged against all members of the **Association**. "**Association**" means the management body of the property owners. They must have common property interest with **you**. The common property must be part of the housing development where **you** live, as shown on the Declarations. **We** will pay up to the limit, shown for this option on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of:

1. a direct loss to property collectively owned by the **Association**. It must be caused by a peril covered under Section I of this policy;

K4

2. an event of the type covered by Section II of this policy; or
3. damages the **Association** is legally obligated to pay due to **personal injury** as a result of:

    a) false arrest, false imprisonment, wrongful eviction, or wrongful entry;

    b) wrongful detention, malicious prosecution, misrepresentation, or humiliation;

    c) libel, slander, defamation of character; or

    d) invasion of rights of privacy.

This coverage is excess over other valid and collectible insurance covering the **Association**. Loss under subparagraph 1. is subject to the Section I deductible shown on the Declarations.

**Option O. Building Ordinance or Law Coverage.**

**We** agree to cover the increased cost resulting from any ordinance or law regulating the:

1. construction;
2. repair;
3. renovation;
4. remodeling; or
5. demolition;

of covered building structures damaged by a Peril Insured Against.

**LIMIT OF PAYMENT**

The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the Coverage A — Limit of Liability shown on the Declarations at the time of loss. This is additional coverage.

The damaged or destroyed building structure must be repaired or replaced at the **residence premises**.

**SPECIAL EXCLUSIONS**

**We** will not pay costs:

1. required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;
2. resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.

    However, this exclusion does not apply if the total damage to the covered building structure is more than 50% of the building's replacement cost, less any ordinance or law expenses, at the time of the loss.

**Option P. Limited Water Back up of Sewers or Drains Coverage.** **We** will pay up to a maximum of $5,000 for all damage to:

1. the Coverage A — Dwelling; and
2. the following personal property:

    a) clothes washers and dryers;

    b) food freezers and the food in them;

    c) refrigerators;

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 48 of 74 PageID #: 51

    d)   ranges;

    e)   portable dishwashers; and

    f)   dehumidifiers;

caused by or resulting from water or water-borne material which:

a)   backs up through sewers or drains from outside the dwelling's plumbing system; or

b)   overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

### EXCLUSIONS

**We** do not cover:

1.   other personal property not specified above;

2.   loss caused by the negligence of an **insured**; or

3.   if the loss occurs or is in progress within the first five (5) days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

### DEDUCTIBLE

**We** will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations, or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

**Option Q.** **Earthquake and Volcanic Eruption Coverage.** **We** insure for direct physical loss to property covered under Section I — Property Coverages caused by earthquake or volcanic eruption. Volcanic eruption means:

    1.   eruption;

    2.   explosion; or

    3.   discharge;

from a volcano.

One or more earthquake shocks or volcanic eruptions that occur within a 72-hour period will constitute a single earthquake or volcanic eruption.

This coverage does not increase the limits of liability stated in the policy.

### DEDUCTIBLE

The earthquake and volcanic eruption deductibles are shown on the Declarations. It replaces any other deductible provision in this policy for covered earthquake and volcanic eruption loss.

**We** will pay only that part of the loss over the earthquake deductible percentage shown on the Declarations. The percent deductible applies separately to each coverage limit and applies separately to loss under each Section I coverage. This includes Building Additions and Alterations Coverage if included in the policy. The deductible amount will not be less than the earthquake dollar deductible on the Declarations for any one loss.

K6

**SPECIAL EXCLUSIONS**

**We** do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to, or aggravated by earthquake or volcanic eruption.

**Option R.** **Broad Water Back up of Sewers or Drains Coverage.** **We** will pay up to the limit of liability, shown on the Declarations for this option, at the time of loss, for direct damage to covered property caused by or resulting from water or water-borne material which:

1. backs up through sewers or drains from outside the dwelling's plumbing system; or

2. overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation** area.

This is the most **we** will pay for all covered property under Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property.

**EXCLUSIONS**

**We** do not cover:

1. loss caused by the negligence of an **insured**; or

2. if the loss occurs or is in progress within the first five days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

**DEDUCTIBLE**

**We** will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

K7



# *General Policy Conditions*

1. **HOW YOUR POLICY MAY BE CHANGED**
   a) Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.
   b) Any **insured** will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.
   c) A waiver or change of a part of this policy must be in writing by **us** to be valid. **Our** request for an appraisal or examination does not waive **our** rights.
   d) The premium for the coverage provided by this policy and attached endorsements is based on information in **our** possession. Any change or correction in this information will allow **us** to make an adjustment of the premium.

2. **CONCEALMENT OR FRAUD**
   a) This policy is void as to all **insureds** if **you** or any other **insured** has intentionally misrepresented any material fact or circumstance which would have caused **us** not to issue or renew this policy.
   b) This policy does not provide coverage for all **insureds** if **you** or any other **insured**, either before or after a loss, has:
      (1) intentionally concealed or misrepresented any material fact or circumstance; or
      (2) committed any fraud or made false statements relating to such loss.

3. **RENEWAL**
   This policy is written for a specific policy period as shown on the Declarations. **We** will renew it for successive policy periods subject to the following conditions:
   a) Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by **us** at the time.
   b) All premiums, premium installment payments and fees must be paid when due.
   c) Prior to the expiration of a policy period for which premium has been paid, **we** will mail a notice to the named **insured** for the premium required to renew or maintain the policy in effect. **We** will mail this notice to the address last known to **us**.
   d) **You** agree to an interior inspection of **your** home by one of **our** representatives to determine **your** continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of **your** policy.

4. **NON-RENEWAL**
   a) At the end of each policy period, **we** will have the right to refuse to renew this policy.
   b) If **we** elect not to renew, **we** will mail written notice to the named **insured**, at the address shown in this policy, at least 30 days before the renewal date of this policy. Proof of mailing shall be proof of notice.
   c) For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

5. **CANCELLATION DURING POLICY PERIOD**
   Any named **insured** may cancel this policy at any time by returning it to **us** or by notifying **us** in writing of the future date cancellation is to take effect.

L1

**We** may cancel this policy only for the reasons stated in this condition by notifying the named **insured** in writing of the date cancellation takes effect. This cancellation notice will be mailed to the named **insured** at the address shown in the policy. Proof of mailing will be proof of notice.

a) When premium has not been paid, whether payable to **us** or **our** agent or under a finance or credit plan, **we** may cancel at any time by giving notice at least 10 days before cancellation takes effect.

b) When this policy has been in effect 60 days or less and is not a renewal with **us**, **we** may cancel for any reason by giving notice at least 10 days before cancellation takes effect.

c) When this policy has been in effect for more than 60 days, or at any time if it is a renewal, **we** may cancel if:

   (1) there has been a material misrepresentation of fact which if known to **us** would have caused **us** not to issue this policy, or caused **us** to issue or renew this policy at a higher premium;

   (2) the risk has changed substantially since the policy was issued; or

   (3) the property or other interest has been transferred to another person, unless the transfer is permissible under the terms of this policy.

   This can be done by giving notice at least 30 days before cancellation takes effect.

d) When this policy is written for a period longer than one year, **we** may cancel for any reason at its anniversary by giving notice at least 30 days before cancellation takes effect.

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to **us**, **we** will refund it within a reasonable time after cancellation takes effect.

## 6. POLICY TRANSFER

This policy may be transferred to another only with **our** written consent.

## 7. SUBROGATION

a) When **we** have paid **you** for a loss covered under this policy and **you** also receive payment for the same loss from another person, entity or organization, the amount received will be held by **you** in trust for **us** and reimbursed to **us** to the extent of **our** payment.

b) An **insured** may, before loss occurs, waive in writing all rights of recovery against any person. The **insured** will provide **us** with proof of the waiver, when requested by **us**. If not waived, when **we** pay a loss, an **insured's** right to recover from someone else becomes **ours** up to the amount **we** paid. An **insured** must protect these rights and help **us** enforce them. This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

## 8. DEATH

If **you** die, **we** continue to insure:

a) the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death.

b) a member of **your** household who is an **insured** at the time of death, but only while a resident of the **residence premises**.

c) with respect to **your** property, the person having proper custody of the property until appointment of a legal representative.

## 9. ADDITIONAL INSURED - NON OCCUPANT

An additional **insured** may be named in this policy. The additional **insured's** interest in the **residence premises** is protected under Coverage A and Coverage B. The additional **insured** is also protected under Coverage E for liability from the ownership, maintenance, or use of the **residence premises**. This provision does not increase the amount of insurance.

L2

10. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

The first named **insured** may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment premium payment charge. **Your** agent or sales representative can provide more information.

11. **NON-SUFFICIENT FUNDS CHARGE**

The company reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.

12. **DIVIDENDS**

The first named **insured** is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company — Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the first named **insured** is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the first named **insured** is entitled to one vote only — regardless of the number of policies issued to the first named **insured** — either in person or by proxy at meetings of members of said company.

The annual meeting of members of the Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of the Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday in April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the first named **insured** at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning the first named **insured** is not subject to any assessment beyond the premiums the above companies require for each policy term.

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 53 of 74 PageID #: 56

**IN WITNESS WHEREOF:** Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, or Nationwide Property and Casualty Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary, and countersigned as may be required by a duly authorized representative of the company.

**Secretary**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company

**President**
Nationwide Mutual Insurance Company
Nationwide Property & Casualty Insurance Company
Nationwide Mutual Fire Insurance Company

**Secretary**
Nationwide Property & Casualty Insurance Company



Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company
Home Office: Columbus, Ohio 43215-2220

L4



# sinkhole activity coverage endorsement

**Please attach this important addition to your policy.**

It is agreed that the policy is amended to provide coverage for **sinkhole activity**. Coverage is subject to all terms and conditions in the policy, except as changed by this endorsement. It is agreed that coverage is hereby amended as follows:

**Definitions**

**Additional Definition Applicable:** For purposes of this endorsement only:

"SINKHOLE ACTIVITY" means settlement or systematic weakening of the earth supporting property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or other similar rock formation.

**SECTION I- Perils Insured Against**

The following is added:

Covered Cause of Loss, COVERAGE C - PERSONAL PROPERTY

**sinkhole activity.** This peril does not include loss caused by **sinkhole activity**:

a) if the dwelling does not sustain physical loss from **sinkhole activity**.

b) if the physical loss to the dwelling does not arise out of, or is not caused by, sudden settlement or collapse supporting the dwelling.

c) unless the sudden settlement or collapse results directly from subterranean voids created by the action of water on limestone or similar rock formation.

**SECTION I- Property Exclusions**

Exclusion 1.a) is hereby deleted and replaced with the following:

a) Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking (other than **sinkhole activity**). Volcanic eruption means: eruption; explosion; or discharge from a volcano.

Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

All other provisions of this policy apply.

This endorsement is issued by the company shown in the Declarations page as the issuing company.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**One Nationwide Plaza  Columbus, OH  43215-2220**
**Hearing or Voice Impaired:  1-800-622-2421 (TTY only)**
**nationwide.com**

Nationwide and the Nationwide framemark are federally registered service marks of Nationwide Mutual Insurance Company

H-6145


# Nationwide®
Insurance

**Endorsement H-6146 — Amendatory endorsement — Insuring agreement**

**Please attach this important addition to your policy.**

It is agreed that the policy is amended as follows:

Under the Insuring agreement, the second paragraph is deleted and replaced by the following:

> The applicable limits of liability and optional coverages **you** have chosen are shown on the Declarations. **We** may change the amount of coverage shown on the Declarations Page to reflect current costs and values when reconstruction cost estimates are conducted or when the policy renews. To maintain an appropriate amount of coverage, it is **your** duty to advise **us** of additions, alterations, or renovations to **your** dwelling. This policy applies only to loss which occurs while the policy is in force.

All other provisions of the policy apply.

This endorsement is issued by the company shown on the Declarations as the issuing company.

**H-6146**

© Nationwide Mutual Insurance Company, All Rights Reserved / Nationwide Mutual Insurance Company and Affiliated Companies / One Nationwide Plaza Columbus, OH 43215
Nationwide, the Nationwide framemark, and Nationwide is On Your Side are service marks of Nationwide Mutual Insurance Company



# Mandatory Endorsement

**Please attach this important addition to your policy.**

It is agreed the policy is amended as follows:

## General Policy Conditions

In the Homeowners Policy, the following is added to **1. How Your Policy May Be Changed**:

1. **HOW YOUR POLICY MAY BE CHANGED**

    e) **You** have a duty to notify **us** as soon as possible of any change which may affect the premium or risk under this policy. This includes, but is not limited to, changes:

    (1) in the title/ownership of the **residence premises**,

    (2) in the occupancy or use of the **residence premises**,

    (3) to the structure, physical improvements, or additions which increase the reconstruction cost of **your** dwelling by $5,000 or more.

## Section I and II - Conditions

In the Condominium Policy, the following is added to Section I and II - Conditions:

**Your Duty To Notify Company:**

You have a duty to notify us as soon as possible of any change which may affect the premium or risk under the policy. This includes, but is not limited to, changes:

(1) in the title/ownership of the **residence premises**,

(2) in the occupancy or use of the **residence premises**.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**One Nationwide Plaza  Columbus, OH  43215-2220**
**Hearing or Voice Impaired:  1-800-622-2421 (TTY only)**
**nationwide.com**

Nationwide and  the Nationwide framemark are federally registered service marks of Nationwide Mutual Insurance Company.

© 2009 Nationwide Mutual Insurance Company, All Rights Reserved

H-6174



# ECS CENTRAL, PLLC

Geotechnical • Construction Materials • Environmental • Facilities

FILED

2016 APR 25 PM 2:26

RICHARD R. ROOKER, CLERK

_____ D C

"Setting the Standard for Service"

EXHIBIT
2

July 14, 2015

Ms. Nancy Mauch
Claims Associate
Nationwide Insurance
Southern Claims Zone
One Nationwide Gateway
Department 5578
Des Moines, Iowa 50391-5578

Reference:     Report of Potential Sinkhole Desk Study and Site Reconnaissance
Wilson Residence (Claim Number: 6341 HO 540510)
2734 Mossdale Drive
Nashville, Tennessee 37217
ECS Project Number: 26-2724

Dear Ms. Mauch:

As authorized by your acceptance of our Proposal No. 26-4421, ECS Central, PLLC (ECS) has completed a desk study and field reconnaissance for the suspected sinkhole at the above-referenced property. This report summarizes the results of the exploration and presents our assessment and recommendations.

## PROJECT INFORMATION

Our understanding of the project is based on telephone and email correspondences between you and Eric Gasiecki of ECS. We understand that the homeowner suspects that an apparent sinkhole depression has formed near the southeastern wall of the house and has caused interior and exterior cracks on the home. We understand that you have asked us to make an assessment of the feature and determine its impact on the property and structures.

## AREA GEOLOGY

The subject site is located in the Central Basin Physiographic Province. The Central Basin is a nearly elliptical-shaped area that is characterized by gently rolling to hilly terrain, with some nearly level areas, and by meandering, low-gradient streams. The average elevation of the Central Basin is about 600 feet above Mean Sea Level (MSL). The Central Basin is underlain by sedimentary rocks (primarily limestone) of the Ordovician Geologic Age, which is generally dated at about 480 million years before the present.

More specifically, according to the USGS Geologic Map of the Antioch Quadrangle (1965), this particular site is underlain by the Lebanon Limestone Formation. This formation is typically a medium-gray to medium dark-gray and brownish-gray to yellowish-brown, cryptocrystalline to very fine-grained with some beds ranging up to coarse-grained, thin-bedded with thin shale partings, fossiliferous, dolomitic fucoids common.

318 Seaboard Lane, Suite 208, Franklin, TN 37067 • T: 615-885-4983 • F: 615-771-4134 • www.ecslimited.com

ECS Capitol Services, PLLC • ECS Carolinas, LLP • ECS Central, PLLC • ECS Florida, LLC • ECS Mid-Atlantic, LLC • ECS Midwest, LLC • ECS Southeast, LLC • ECS Texas, LLP



**Figure 1** –Site Geology
(Antioch *Quadrangle, Tennessee Division of Geology*, 1965)

The rock types underlying this site are soluble in slightly acidic groundwater. As such, weathering is typified by a chemical solutioning process progressing along joints and bedding planes in the bedrock. This process often results in a highly irregular rock profile that contains deep weathering slots (throats) filled with soft and wet soils. Voids or caves may also be present in the bedrock. These conditions may promote the formation of sinkholes (rapid ground subsidence).

Sinkholes are a common occurrence in the subject geologic formations due to ongoing, active solutioning of the in-place parent rock. Sinkhole type and size are a function of the thickness of soil overburden and the characteristics on the parent rock. The suspected formation of a cover-collapse sinkhole leading to settlement in the structure is the subject of this study.

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 59 of 74 PageID #: 62

SITE RECONNAISSANCE

Mr. Eric Gasiecki of ECS conducted an initial site visit of the property to assess the condition of the house and to observe the suspected sinkhole area. During this visit, the homeowner informed Mr. Gasiecki of related events. The following is a summary of the information provided:

- The property owner has lived at the residence for over 10 years and cracks have formed in the walls of the house, primarily near window openings, over the last several years.

- While replacing the flooring in the house, the homeowner noted that there was an apparent depression in the upstairs floor in the middle of the house and suspected that the house may be experiencing some foundation issues.

- Stair-step cracks following the mortar lines of the brick wall were found near the windows on the northeastern and southeastern sides of the house. (Figure 2)

- A crack following the mortar lines of the CMU block wall was found on the western side of the basement wall. (Figure 3)

- An approximate 1-inch depression was observed in the middle hallway of the upstairs level of the house.

- Cracks were observed in the sidewalk on the southern side of the house. It also appears that one of the sections of the concrete had been recently replaced.

- No obvious cracks or distress were observed in the basement slab directly below the area of the depression in the upstairs level. There were column support jacks present in the areas directly below the upstairs depression at the time of our visit.

- Small interior cracks were noted primarily around door and window frames as well as the around the base of the fireplace. It appeared that a crack around the fireplace had been previously patched. (Figure 4)

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 60 of 74 PageID #: 63



**Figure 2** – Small crack noted near front window

FIELD EXPLORATION

A field exploration visit was performed by Mark Van Aken and Brittney Carney of ECS on May 28, 2015, to evaluate the subsurface condition in select locations of the house. Three (3) test boring locations were located in the field by ECS and are shown approximately in Figure 5.

It should be noted that the proposed scope of services for the subject study included coring multiple areas inside the basement - near the cracks observed at the windows on the northeastern and southeastern sides and on the eastern side near the crack in the CMU basement wall. These areas had been approved by Mr. Ryan Risteen with Phenix Consulting; however, the homeowner requested that the cored locations within the basement be limited to one. The remaining two planned coring locations were moved to the outside of the building adjacent to the original planned locations inside the building. B-1 was performed inside the basement, and borings B-2 and B-3 were performed outside the structure.

Wildcat$^{TM}$ Dynamic Cone Penetrometer testing was performed at the boring locations to test the subsurface soil's relative density or consistency. The number of blows of the 35-pound hammer required to drive the penetrometer through continuous 10-centimeter increments were recorded. The results of the Wildcat$^{TM}$ blow counts produce an approximate 1:1 relationship when compared to the Standard

-4-

Penetration Test (SPT) N-value. The penetrometer resistances (blow counts) and respective consistencies and relative densities are provided on the boring logs attached to this report.

A field log of the wildcat blow counts at each boring was maintained by an ECS field representative. After completion of the field exploration operations, the hand auger holes were backfilled with auger cuttings, and the concrete slab area was filled at the surface with Quickcrete.

Wildcat borings were extended to depths ranging from 7 to 9 feet below the existing ground surface. The Wildcat results consisted of N-Values varying from 2 to 25+ with the typical blow counts ranging between 4 and 13. It should also be noted that the blow counts increased as the depths increased, and that no obvious loss of soil support was encountered at the test locations (indicated by tool drop).



**Figure 3** – Stair-step crack noted in block joints in western wall of basement

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 62 of 74 PageID #: 65



**Figure 4** – View of a crack that had previously been patched on the fireplace



**Figure 5** – Arial view of the subject site with approximate penetrometer test locations shown

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 63 of 74 PageID #: 66

## CONCLUSIONS AND RECOMMENDATIONS

Based on the desk study and the conditions encountered during field reconnaissance, we offer the following conclusions and recommendations to help guide you in further decision making:

- While the geological formations in the area of the subject property are potentially prone to karst-related subsidence, we <u>do not conclude</u> that the subject depression was karst-related at the time of this study.

- Long term settlement appears to have an impact on the subject cracks found within the house. As stated previously, no apparent loss of support was observed in the test borings that were performed at the exterior and interior of the house. Also, several cracks appear to have been previously patched (near the fireplace on the north side of the house, the sidewalk along the south of the house, and along the western exterior wall) which could be an indication of long-term settlement.

- As a general matter of precaution in karst areas, we recommend to the homeowner a regular practice of monitoring the area and surrounding property for any settlement or depressions. This will help to note smaller problems so proactive steps can be taken before they become larger problems. As an example, this could involve a series of photos taken from the same location and direction at regular time intervals in order to document potential changes.

Case 3:16-cv-00902   Document 1-1   Filed 05/19/16   Page 64 of 74 PageID #: 67

## GENERAL COMMENTS AND CLOSURE

The conclusions and recommendations provided in this report are based upon the information provided to us at the time of the report, the results of the field reconnaissance at the time of the visit, and our experience with similar projects. If additional data becomes available or if varying conditions are encountered, ECS should be notified to review our recommendations and make revisions, as needed. Our scope did not include design details for any repair.

We appreciate the opportunity to be of service to you on this project. If you have any questions concerning the information presented in this report, or if we can be of further assistance, please contact us at 615-885-4983.

Respectfully,

ECS CENTRAL, PLLC represented by:


Eric Gasiecki, E.I.
Geotechnical Project Manager

David G. Marsh, P.E.
Senior Project Engineer


Derek L. Clyburn
Principal

07/14/2015

Attachments:    Boring Logs

-8-

# WILDCAT DYNAMIC CONE LOG

Page 1 of 1

ECS Central, PLLC
318 Seaboard Lane #208
Franklin, TN 37067

| | |
|---|---|
| PROJECT NUMBER: | 26:2724 |
| DATE STARTED: | 05-28-2015 |
| DATE COMPLETED: | 05-28-2015 |

HOLE #: B-1
CREW: M. Van Aken
PROJECT: Nationwide Sinkhole (Wilson)
ADDRESS: 2734 Mossdale Drive
LOCATION: Nashville, Tennessee

| | |
|---|---|
| SURFACE ELEVATION: | |
| WATER ON COMPLETION: | |
| HAMMER WEIGHT: | 35 lbs. |
| CONE AREA: | 10 sq. cm |

| DEPTH | BLOWS PER 10 cm | RESISTANCE Kg/cm² | GRAPH OF CONE RESISTANCE 0  50  100  150 | N' | TESTED CONSISTENCY NON-COHESIVE | COHESIVE |
|---|---|---|---|---|---|---|
| | 0 | 0.0 | | 0 | VERY LOOSE | VERY SOFT |
| | 0 | 0.0 | | 0 | VERY LOOSE | VERY SOFT |
| 1 ft | 3 | 13.3 | ••• | 3 | VERY LOOSE | SOFT |
| | 5 | 22.2 | •••••• | 6 | LOOSE | MEDIUM STIFF |
| | 3 | 13.3 | ••• | 3 | VERY LOOSE | SOFT |
| 2 ft | 4 | 17.8 | ••••• | 5 | LOOSE | MEDIUM STIFF |
| | 4 | 17.8 | ••••• | 5 | LOOSE | MEDIUM STIFF |
| | 4 | 17.8 | ••••• | 5 | LOOSE | MEDIUM STIFF |
| 3 ft | 4 | 17.8 | ••••• | 5 | LOOSE | MEDIUM STIFF |
| 1 m | 5 | 22.2 | •••••• | 6 | LOOSE | MEDIUM STIFF |
| | 4 | 15.4 | •••• | 4 | VERY LOOSE | SOFT |
| 4 ft | 5 | 19.3 | ••••• | 5 | LOOSE | MEDIUM STIFF |
| | 6 | 23.2 | •••••• | 6 | LOOSE | MEDIUM STIFF |
| | 6 | 23.2 | •••••• | 6 | LOOSE | MEDIUM STIFF |
| 5 ft | 5 | 19.3 | ••••• | 5 | LOOSE | MEDIUM STIFF |
| | 6 | 23.2 | •••••• | 6 | LOOSE | MEDIUM STIFF |
| | 6 | 23.2 | •••••• | 6 | LOOSE | MEDIUM STIFF |
| 6 ft | 6 | 23.2 | •••••• | 6 | LOOSE | MEDIUM STIFF |
| | 7 | 27.0 | ••••••• | 7 | LOOSE | MEDIUM STIFF |
| 2 m | 7 | 27.0 | ••••••• | 7 | LOOSE | MEDIUM STIFF |
| 7 ft | 9 | 30.8 | •••••••• | 8 | LOOSE | MEDIUM STIFF |
| | 10 | 34.2 | ••••••••• | 9 | LOOSE | STIFF |
| | 10 | 34.2 | ••••••••• | 9 | LOOSE | STIFF |
| 8 ft | 50 | 171.0 | ••••••••••••••••••••••••••••••••••••••• | 25+ | DENSE | HARD |
| 9 ft | | | | | | |
| 3 m  10 ft | | | | | | |
| 11 ft | | | | | | |
| 12 ft | | | | | | |
| 4 m  13 ft | | | | | | |

# WILDCAT DYNAMIC CONE LOG

ECS Central, PLLC
318 Seaboard Lane #208
Franklin, TN 37067

| | |
|---|---|
| PROJECT NUMBER: | 26:2724 |
| DATE STARTED: | 05-28-2015 |
| DATE COMPLETED: | 05-28-2015 |

HOLE #: B-2
CREW: M. Van Aken
PROJECT: Nationwide Sinkhole (Wilson)
ADDRESS: 2734 Mossdale Drive
LOCATION: Nashville, Tennessee

| | |
|---|---|
| SURFACE ELEVATION: | |
| WATER ON COMPLETION: | |
| HAMMER WEIGHT: | 35 lbs. |
| CONE AREA: | 10 sq. cm |

| DEPTH | BLOWS PER 10 cm | RESISTANCE Kg/cm² | GRAPH OF CONE RESISTANCE | N' | TESTED CONSISTENCY NON-COHESIVE | TESTED CONSISTENCY COHESIVE |
|---|---|---|---|---|---|---|
| | 3 | 13.3 | | 3 | VERY LOOSE | SOFT |
| | 2 | 8.9 | | 2 | VERY LOOSE | SOFT |
| 1 ft | 4 | 17.8 | | 5 | LOOSE | MEDIUM STIFF |
| | 3 | 13.3 | | 3 | VERY LOOSE | SOFT |
| | 3 | 13.3 | | 3 | VERY LOOSE | SOFT |
| 2 ft | 3 | 13.3 | | 3 | VERY LOOSE | SOFT |
| | 3 | 13.3 | | 3 | VERY LOOSE | SOFT |
| 3 ft | 4 | 17.8 | | 5 | LOOSE | MEDIUM STIFF |
| | 5 | 22.2 | | 6 | LOOSE | MEDIUM STIFF |
| 1 m | 6 | 26.6 | | 7 | LOOSE | MEDIUM STIFF |
| | 5 | 19.3 | | 5 | LOOSE | MEDIUM STIFF |
| 4 ft | 5 | 19.3 | | 5 | LOOSE | MEDIUM STIFF |
| | 5 | 19.3 | | 5 | LOOSE | MEDIUM STIFF |
| | 5 | 19.3 | | 5 | LOOSE | MEDIUM STIFF |
| 5 ft | 7 | 27.0 | | 7 | LOOSE | MEDIUM STIFF |
| | 11 | 42.5 | | 12 | MEDIUM DENSE | STIFF |
| | 9 | 34.7 | | 9 | LOOSE | STIFF |
| 6 ft | 15 | 57.9 | | 16 | MEDIUM DENSE | VERY STIFF |
| | 31 | 119.7 | | 25+ | DENSE | HARD |
| 2 m | 29 | 111.9 | | 25+ | DENSE | HARD |
| 7 ft | 28 | 95.8 | | 25+ | MEDIUM DENSE | VERY STIFF |
| 8 ft | | | | | | |
| 9 ft | | | | | | |
| 3 m 10 ft | | | | | | |
| 11 ft | | | | | | |
| 12 ft | | | | | | |
| 4 m 13 ft | | | | | | |

# WILDCAT DYNAMIC CONE LOG

Page 1 of 1

ECS Central, PLLC
318 Seaboard Lane #208
Franklin, TN 37067

| | |
|---|---|
| PROJECT NUMBER: | 26:2724 |
| DATE STARTED: | 05-28-2015 |
| DATE COMPLETED: | 05-28-2015 |

HOLE #: B-3
CREW: M. Van Aken
PROJECT: Nationwide Sinkhole (Wilson)
ADDRESS: 2734 Mossdale Drive
LOCATION: Nashville, Tennessee

| | |
|---|---|
| SURFACE ELEVATION: | |
| WATER ON COMPLETION: | |
| HAMMER WEIGHT: | 35 lbs. |
| CONE AREA: | 10 sq. cm |

| DEPTH | BLOWS PER 10 cm | RESISTANCE Kg/cm² | GRAPH OF CONE RESISTANCE | N' | TESTED CONSISTENCY NON-COHESIVE | TESTED CONSISTENCY COHESIVE |
|---|---|---|---|---|---|---|
| | 3 | 13.3 | | 3 | VERY LOOSE | SOFT |
| | 6 | 26.6 | | 7 | LOOSE | MEDIUM STIFF |
| 1 ft | 7 | 31.1 | | 8 | LOOSE | MEDIUM STIFF |
| | 11 | 48.8 | | 13 | MEDIUM DENSE | STIFF |
| | 8 | 35.5 | | 10 | LOOSE | STIFF |
| 2 ft | 23 | 102.1 | | 25+ | MEDIUM DENSE | VERY STIFF |
| | 17 | 75.5 | | 21 | MEDIUM DENSE | VERY STIFF |
| | 9 | 40.0 | | 11 | MEDIUM DENSE | STIFF |
| 3 ft | 6 | 26.6 | | 7 | LOOSE | MEDIUM STIFF |
| 1 m | 6 | 26.6 | | 7 | LOOSE | MEDIUM STIFF |
| | 9 | 34.7 | | 9 | LOOSE | STIFF |
| 4 ft | 9 | 34.7 | | 9 | LOOSE | STIFF |
| | 9 | 34.7 | | 9 | LOOSE | STIFF |
| | 6 | 23.2 | | 6 | LOOSE | MEDIUM STIFF |
| 5 ft | 9 | 34.7 | | 9 | LOOSE | STIFF |
| | 10 | 38.6 | | 11 | MEDIUM DENSE | STIFF |
| | 11 | 42.5 | | 12 | MEDIUM DENSE | STIFF |
| 6 ft | 10 | 38.6 | | 11 | MEDIUM DENSE | STIFF |
| | 9 | 34.7 | | 9 | LOOSE | STIFF |
| 2 m | 9 | 34.7 | | 9 | LOOSE | STIFF |
| 7 ft | 9 | 30.8 | | 8 | LOOSE | MEDIUM STIFF |
| | 9 | 30.8 | | 8 | LOOSE | MEDIUM STIFF |
| | 10 | 34.2 | | 9 | LOOSE | STIFF |
| 8 ft | 10 | 34.2 | | 9 | LOOSE | STIFF |
| | 10 | 34.2 | | 9 | LOOSE | STIFF |
| | 18 | 61.6 | | 17 | MEDIUM DENSE | VERY STIFF |
| 9 ft | 9 | 30.8 | | 8 | LOOSE | MEDIUM STIFF |
| | 50 | 171.0 | | 25+ | DENSE | HARD |
| 3 m 10 ft | | | | | | |
| | | | | | | |
| 11 ft | | | | | | |
| 12 ft | | | | | | |
| 4 m 13 ft | | | | | | |

Graph of cone resistance scale: 0 50 100 150



Nationwide Insurance
Allied Insurance
Nationwide Agribusiness
Titan Insurance
*On Your Side*   Victoria Insurance

FILED

2016 APR 25 PM 2: 27

RICHARD R. ROOKER, CLERK
BY _____ DC

PHOENIX CLAIMS CONSULTING

Date prepared   September 1, 2015
Claim number   63 41 HO 540510
                04232015 01

PHOENIX CLAIMS CONSULTING
301 S PERIMETER PARK DR, STE 100
NASHVILLE, TN  37211

Questions?   Contact Claims Associate
             Nancy E. Mauch
             mauchn@nationwide.com
             Phone  (813)477-0615

## Claim details

Insurer:        Nationwide Property & Casualty Insurance Company
Policyholder:   Larry Wilson
Claimant:       Larry Wilson
Claim number:   63 41 HO 540510 04232015 01
Loss date:      04-23-2015
Loss location:  2734 Mossdale Dr., Nashville, TN

Dear Mr. Risteen,

We have carefully reviewed the facts and circumstances of this claim.  This included, but was not limited to, the cause and origin report from ECS Central, PLLC, as well as information obtained in the investigation by Nationwide. Unfortunately, we find that your policy does not provide coverage for the damage to the property located at 52734 Mossdale Dr., Nashville, TN.  A copy of the report authored by David Marsh is enclosed for your review.

According to ECS Central PLLC, none of the damage claimed was caused by sinkhole activity.  Further, the engineer determined the damage and/or distress observed was caused by:

> While the geological formations in the area of the subject property are potentially prone to karst related subsidence, we do not conclude that the subject depression was karst related at the time of this study.

> Long term settlement appears to have an impact on the subject cracks found within the house. As stated previously, no apparent loss of support was observed in the test borings that were performed at the exterior and interior of the house. Also, several cracks appear to have been previously patched (near the fireplace on the north side of the house, the sidewalk along the south of the house, and along the western exterior wall) which could be an indication of long-term settlement.

The policy provided coverage for the following covered causes of loss:

Covered Causes of Loss

COVERAGE A - DWELLING and
COVERAGE B - OTHER STRUCTURES

We cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I - Property Exclusions.

Tennessee law requires the following notice:  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

EXHIBIT
3



**Nationwide Insurance**

**Allied Insurance**

**Nationwide Agribusiness**

**Titan Insurance**

**Victoria Insurance**

*On Your Side®*

Thus, risks of accidental direct physical loss to covered property are covered unless excluded by the policy. However, even if the claimed damage amounted to a direct physical loss, our investigation revealed the following exclusions applicable to your claim:

Property Exclusions
(Section I)

1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

a) Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking (other than sinkhole activity). Volcanic eruption means: eruption; explosion; or discharge from a volcano.

Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

•          •          •

2. We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

a) A fault, weakness, defect or inadequacy in the:

(1) specifications, planning, zoning;

(2) design, workmanship, construction, materials;

(3) surveying, grading, backfilling;

(4) development or maintenance;

of any property on or off the residence premises, whether intended or not.

•          •          •

3. We do not cover loss to property described in Coverages A and B resulting directly from any of the following:

•          •          •

f)(1)    wear and tear, marring, deterioration;

(2)    inherent vice, latent defect, mechanical breakdown;

(6)    settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

•          •          •

These policy provisions exclude earth movement, which includes earth rising, shifting or sinking; defective workmanship; wear and tear; and settling, cracking, building or expansion of foundations, walls, or floors. Nationwide's investigation determined the damage claimed was caused by one or more of the above excluded causes of loss which operate independently to bar coverage for your loss.

The policy included an important endorsement providing sinkhole activity coverage. We also examined that endorsement in order to determine whether coverage might apply to your loss. That endorsement amended

Tennessee law requires the following notice: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.



the policy to include coverage for losses that might ordinarily be excluded by the earth movement exclusion if a loss is due to "sinkhole activity." The endorsement specifically defined "sinkhole activity" as follows:

"SINKHOLE ACTIVITY" means settlement or systematic weakening of the earth supporting property only when such settlement or systematic weakening results from movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or other similar rock formation.

As noted above, ECS inspected the loss and performed its engineering investigation. It concluded none of the damage exhibited at the loss location was the result of sinkhole activity. For this reason, the provisions of the sinkhole endorsement do not apply to your loss.

We would also note that the policy provides the following provision concerning restoration or stabilization of land:

COVERAGE AGREEMENTS

• • •

We do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.

Consequently, any costs associated with filling, remediating, restoring or stabilizing your land, including the alleged sinkhole in your garden or elsewhere on your property, are not covered by the policy.

Further, based upon our investigation and the date of loss you supplied upon report of this claim, your claim was not reported timely as required by the following policy condition:

There may be additional reasons why coverage would not apply to this loss. Neither this letter nor any act by any representative of Nationwide should be construed as a waiver of any of the policy terms and conditions. Nationwide specifically reserves its right to reply upon the policy language and to deny coverage for any valid reason that may appear.

If you have any questions about the above, please contact me.

**For more information**

If you have any questions or concerns, please contact me at (813)477-0615 or mauchn@nationwide.com.

Sincerely,

Nancy E. Mauch
Nationwide Property & Casualty Insurance Company
One Nationwide Gateway
Dept 5578
Des Moines, IA 50391-5578

Enclosure:
ECS report

cc:
Larry Wilson

Tennessee law requires the following notice: It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

EXHIBIT
4

FILED
2016 APR 25 PM 2: 27
RICHARD R. ROOKER, CLERK
_____ D C

**F A R R A R | W R I G H T**
ATTORNEYS AND ADVISORS

AMY FARRAR
AMY@FARRARWRIGHT.COM

SONYA SMITH WRIGHT
SONYA@FARRARWRIGHT.COM

November 23, 2015

**Via U.S. Mail and E-Mail: Mauchn@nationwide.com**
Ms. Nancy Mauch
Nationwide Property & Casualty Insurance Company
One Nationwide Gateway
Department 5578
Des Moines, IA 50391-5578

Re:     Insured: Larry and Kandice Wilson
        Address: 2734 Mossdale Drive
                 Nashville, TN 37217
        Claim No.: 6341 HO 540510

Dear Ms. Mauch:

My firm represents Larry and Kandice Wilson with regards to their insurance claim with Nationwide Insurance ("Nationwide") for damages that occurred on or about April 23, 2015 to their home. Mr. and Mrs. Wilson have owned their home for over 10 years and have been customers of Nationwide for the past three years. As you are aware, our clients contracted with Nationwide for a Homeowner's Policy ("Policy") and this Policy was in full force and effect at the time of the loss.

Our clients' home was severely damaged and they contacted Nationwide to report the loss that occurred to their home. They never noticed any damage when they purchased the home and were not aware of any problems with cracking until recently. The damage to their home consists of major cracking that goes from the front of the home and goes straight through the home to the back porch and back of the home. Our clients received a letter from you dated September 1, 2015, informing them that Nationwide would be denying this claim, stating that based on the report of ECS Central, PLLC, that the damage was not the result of sinkhole activity. However, this determination was made despite the ECS Central, PLLC report concluding that "the geological formations in the area of the subject property are potentially prone to karst related subsidence" and that the Wilson's should continue to monitor their home. In reviewing the ECS Central, PLLC report, it concluded that sinkhole activity does potentially exist within proximity of the property and concluded that the damage is from "long term settlement." Yet, there is no indication or conclusion as to what caused that "long term settlement."

In addition, it appears no floor elevation was completed and no drilling was done. It is concerning that a determination was made as to subsurface conditions with this limited investigation.

Given these findings, we would request that you re-evaluate this claim and cover the loss if appropriate. We would also request that you provide a certified copy of our client's Policy to us at 106 North Church Street, Murfreesboro, TN 37130.

If we have not received a satisfactory response by December 7, 2015, my clients have given me the authority to proceed with whatever legal action is necessary to resolve this matter including seeking attorney's fees and expenses if appropriate. This letter also serves as a written demand and notice that failure to pay the claim may result in a pursuit of the bad-faith penalty in court pursuant to Tenn. Code Ann. § 56-7-105.

Thank you for your immediate attention to this matter.

Sincerely,

*Sonya S. Wright/cm*

Sonya S. Wright



CERTIFIED MAIL®

STAT...
DEPARTMENT OF C...
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TENNESSEE 37243

7015 0640 0007 0043 3217



02 1M
0004282328    MAY 04 2016
MAILED FROM ZIPCODE 37243

3854383

7015 0640 0007 0043 3217          05/02/2016
NATIONWIDE PROPERTY & CASUALTY INS CO
2908 POSTON AVENUE, C/O C S C
NASHVILLE, TN  37203